COMMONWEALTH *vs.* GEORGE ELMER HARRISON TAYLOR.

Essex.   January 12, 1928. — April 17, 1928.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Homicide*, Intent, Intoxication as a defence.  *Evidence*, Criminal record.  *Words*, "Extreme atrocity or cruelty."

At the trial of an indictment for murder, the defendant testified on October 18, 1927.  The Commonwealth offered a criminal record of another State showing that the defendant, on March 10, 1913, had been convicted of robbery and sentenced to five years at the State peniten-

tiary.  It appeared that by the law of that State, the defendant's sentence might have expired November 14, 1916, because of diminution of time for good conduct, but that the sentence was extended four hundred eighty days for infraction of prison regulations, so that it actually expired on March 9, 1918.  *Held*, that the record properly was admitted in evidence under G. L. c. 233, § 21 (Third).

At the trial of the indictment above described, there was evidence that the deceased, a girl twenty years of age, was found lying upon a beach. There were marks in the sand indicating a struggle.  The position of the body, together with bruises, lacerations and other marks upon it, indicated that she had been strangled and that rape had been attempted upon her.  Other marks indicated that a watch she had been wearing had been torn down over her hand from her wrist.  *Held*, that the judge properly submitted to the jury the question whether the murder was committed with the extreme atrocity or cruelty necessary to a verdict of murder in the first degree.

It appeared at the trial of the indictment above described that the defendant was seen going to the beach at 10:30 P.M. and leaving it at 11:05 P.M.  He testified that he drank large quantities of intoxicating liquor in the afternoon preceding the murder; and that after his last drink at about 3:30 P.M., at a place a few miles from the beach, he had no recollection of what happened until he woke up the next morning in a neighboring city.  *Held*, that

(1) The judge properly instructed the jury as follows: "Drunkenness is no excuse for killing another while engaged in the act of robbing him. Drunkenness is no excuse for attempting to rape a girl and killing her in the act of that attempt. . . . But on the question of murder in the first degree deliberately premeditated now, apart and distinct from murder committed while engaged in robbery or attempt to rape, if you are satisfied . . . that the defendant . . . was incapable of conceiving a deliberately premeditated intention to kill because of intoxication, he is not guilty of murder in the first degree . . . ";

(2) There was no error in refusing to rule that, if the defendant was by reason of intoxication incapable of forming the intent required in the crimes of rape or robbery, he was not guilty of murder in the first degree.

INDICTMENT, found and returned on September 16, 1927, charging the defendant with the murder of Stella Pomkala.

The defendant was tried before *Quinn,* J., on October 10–20, 1927, and was found guilty.  Material evidence is stated in the opinion.

On November 1, 1927, the defendant filed a claim of appeal.  On November 28, a transcript of the testimony was delivered to the clerk of the court.  On December 14, 1927, under an extension of time, the defendant filed an assignment of errors.

The case was submitted on briefs.

*J. H. O'Neil & F. E. Rafter,* for the defendant.

*W. G. Clark,* District Attorney, *E. F. Flynn,* Assistant District Attorney, *& F. E. Raymond,* Assistant District Attorney, for the Commonwealth.

PIERCE, J.    This is an appeal, on an assignment of errors under St. 1925, c. 279, from a conviction of the defendant of murder in the first degree of Stella Pomkala, age twenty, at Salisbury Beach in the town of Salisbury and county of Essex.

At the trial there was evidence, undisputed by the defendant, which warranted a jury in finding the following facts: On the evening of June 5, 1927, the deceased left the studio of her employer at Salisbury Beach for a walk, wearing on her wrist a Waltham watch and on her finger a ring.    At 7:30 A.M. her body was found strangled on the beach some distance from the studio.    There were marks in the sand which indicated a struggle.    Her body was lying on its back, head toward the water, legs spread apart, dress above her knees, and her bloomers cut in five or six pieces with a very long knife, a razor or scissors.

The autopsy disclosed bruises in both upper lids of her eyes and hemorrhage to the membrane covering the eyes, showing "the sort of thing that would come from the pressure of fingers or thumbs."    A series of bruises across her neck and down the side of her neck, bruises and an abrasion on her hand, which "might well have been produced by the tearing of a wrist watch down over the back of the hand," laceration of the lesser lips of the vagina and a laceration of the fourchette, which "might have been the result of the application of a male organ."    The autopsy further disclosed that the deceased was a virgin, that no instrument or implement was used in the commission of the murder, and that the marks on her face, neck, hands, vagina and fourchette were imposed on the deceased before her death.

There was uncontradicted evidence that the defendant, wearing "goggles" similar to those found near the body, was on Salisbury Beach Sunday night, June 5, 1927; that he had an odor of liquor on his breath; that at 10:30 P.M. he was seen going in the direction of that part of the beach where

the body was found, and that at 11:05 P.M. he was seen without goggles, coming from the part of the beach where the body was found; and that the wrist watch which the deceased was wearing at the time of her death was sold by the defendant to a man named Dowe, who turned it over to the authorities. There was evidence that the defendant on June 4 and 5 was employed as a barber at Hampton Beach, New Hampshire; that about noon on June 5, he purchased and drank a pint of witch hazel; that between noon and 3:30 in the afternoon he purchased and drank three bottles of witch hazel and a pint of "moonshine" whiskey; that about 3:30 he met some men, was offered and accepted a ride; that the men had a combination of alcohol and water and he drank some of it. He testified, in substance, that he had no recollection of what happened after he took the last drink, between Hampton Beach and the town of Hampton, until he woke up the next morning at the "Salvation Army Palace" in Boston.

At the trial the Commonwealth offered and the court received in evidence, against the exceptions of the defendant, a criminal record of the State of West Virginia, showing that the defendant on March 10, 1913, was convicted of robbery and sentenced to five years at the West Virginia penitentiary. It is the contention of the defendant that under G. L. c. 233, § 21 (Third) the record was not admissible because the day, October 18, 1927, when the defendant testified, was "after ten years from the date of expiration of the minimum term of imprisonment imposed by the court." The statutes of West Virginia upon which the defendant relies to establish his contention that the minimum term of his sentence had expired more than ten years before the day of his testimony are the acts of 1882, c. 118, § 12, fixing the penalty of robbery and the place of the execution of it; the act of 1882, c. 154; and the act of 1893, c. 46, § 26, which reads: "All convicts sentenced to the penitentiary for a term of two years or more, and not for life, who may faithfully comply with all the rules and regulations of the penitentiary during his, or her term of confinement, shall be entitled to a diminution of time from such sentence of five days per month during his or her

term of confinement: provided, however, that any infraction of such rules and regulations by a convict shall, as to such convict, operate only as a deprivation of such diminution of time for the month in which such infraction of the rules and regulations occurs, and for as many of the preceding months of said convict's term of confinement as in the judgment of the warden will be equitable and just." The defendant's sentence, which would have expired nominally on "November 14, 1916," had he observed the rules and regulations, was extended "480 days" during his incarceration at the West Virginia penitentiary, and they "were added to his sentence for violation of certain rules of that institution." It is obvious the right to a diminution in the sentence imposed was not absolute, but was conditional upon obedience to the rules and regulations of the penitentiary, and that without such obedience no right to a diminution is conferred by the statute. The evidence was admitted rightly. The sentence expired in fact on "March 9, 1918," that is, within ten years before October 18, 1927, and the exceptions must be overruled.

The second assignment of errors arises on the exceptions saved to the refusal of the judge to rule (1) "On all the evidence the Commonwealth has not shown, as a matter of law, that the murder was committed with the extreme atrocity or cruelty necessary to a verdict of murder in the first degree"; (2) "The death by strangulation of the deceased, Stella Pomkala, in the manner shown by the Commonwealth was not extreme atrocity or cruelty"; (3) "The word 'extreme' as used in G. L. c. 265, § 1, has an important significance. Murder that is atrocious and cruel is not sufficient to justify a jury in rendering a verdict of murder in the first degree"; and (4) "The word 'extreme' as used in G. L. c. 265, § 1, transcends the ordinary atrociousness and cruelty ordinarily associated with murder." The recital of the facts, *supra*, and the circumstances under which the deceased was robbed, raped and murdered would seem to silence every doubt that the judge acted rightly in submitting to the jury the question whether the atrocity or cruelty of the murder was "extreme." *Commonwealth* v. *Desmarteau*, 16 Gray, 1. *Commonwealth*

v. *Feci*, 235 Mass. 562. *Commonwealth* v. *Devereaux,* 256 Mass. 387. It is to be noted that the defendant makes no contention that the judge erroneously instructed the jury in the law which should govern their determination, but "rather that he should have withheld its submission from the jury."

The third, fourth and fifth assignments of error are based on exceptions taken to the refusal to rule (1) "Robbery requires a specific intent"; (2) "Rape requires a specific intent"; (3) "Assault with intent to rape requires a specific intent"; (4) "If the jury find that the deceased, Stella Pomkala, was murdered in the commission or attempted commission of the crime of rape or of the crime of assault with intent to rape, and the jury further find that the defendant's intoxication rendered the defendant incapable of forming the intent required in the crime of rape then the defendant is not guilty of murder in the first degree, but of murder in the second degree"; and (5) "If the jury find that the deceased, Stella Pomkala, was murdered in the commission or attempted commission of the crime of robbery and the jury further find that the defendant's intoxication rendered the defendant incapable of forming the intent required in the crime of robbery, then the defendant is not guilty of murder in the first degree, but of murder in the second degree." It is important to bear in mind that the uncontroverted facts warranted the jury in finding as proved beyond a reasonable doubt that there were committed on June 5, 1927, on the person of the deceased, at the same time the crimes of robbery, rape and murder, and not merely evidence of an unsuccessful or uncompleted attempt to commit a robbery, a rape, or a murder. *Commonwealth* v. *Hollis,* 170 Mass. 433. *Kenney* v. *State,* (Texas) 65 L. R. A. 316. *People* v. *Courier,* 79 Mich. 366. *Brauer* v. *State,* 25 Wis. 413. *State* v. *Hargrave,* 65 N. C. 466. *People* v. *Crowley,* 102 N. Y. 234. *Regina* v. *Lines,* 1 C. & K. 393. *Regina* v. *Allen,* 9 C. & P. 31. *Regina* v. *Hughes,* 9 C. & P. 752.

The trial judge limited the consideration of drunkenness to the question of murder committed with deliberately premeditated malice and on the issue presented by the requests instructed the jury as follows: "Intoxication has been fre-

quently referred to in this case.   Every man is presumed to be sane.   There is no contention in this case that the defendant is insane, that he had any mental disease.   And also every one is presumed to intend the natural consequences of his act.   The mere fact that one who killed another was intoxicated, does not necessarily indicate that the killing was not done in a deliberately premeditated manner.   Drunkenness cannot be converted into a shield to protect from punishment a serious crime.   Many crimes are committed under the stimulus of liquor.   And the effects of liquor upon the mind and actions of men are well known to everybody. Voluntary intoxication is never an excuse or a palliation for crime.   It would be subversive of all law and morality if the commission of one vice like drunkenness, or crime as it is under our statute here, should be allowed to excuse another crime.   One may be perfectly unconscious of what he is doing and yet be responsible for his conduct during drunkenness.   You will consider what evidence there is in this case as to how drunk the defendant was that night.   It is urged upon you by the Commonwealth that the contention of the defendant that he was not at Salisbury Beach on the night in question, that on that night he was so drunk he was unconscious of what he did or his whereabouts, is an invention born of the situation in which the evidence places him.   This is entirely for your determination.   Drunkenness is no excuse for killing another while engaged in the act of robbing him.   Drunkeness is no excuse for attempting to rape a girl and killing her in the act of that attempt.   No matter how drunk one may be and no matter what the intention may be, the law does not permit drunkenness under such circumstances to be an excuse for the crime.   But on the question of murder in the first degree deliberately premeditated now, apart and distinct from murder committed while engaged in robbery or attempt to rape, if you are satisfied upon the evidence that the defendant killed the deceased but that he was incapable of conceiving a deliberately premeditated intention to kill because of intoxication, he is not guilty of murder in the first degree, but he is guilty of murder in the second degree.   That is because deliberate premeditation is

required there, and if a man is so overcome by liquor that he is incapable of deliberately premeditating, the law says, out of kindness to him in that situation, that he is not guilty of murder in the first degree, but he is guilty of murder in the second degree."

Upon the question whether the deceased was assaulted, and whether there was an unsuccessful attempt to rape her, as distinguished from completed crimes, it is the contention of the defendant that it was necessary for the Commonwealth to prove beyond a reasonable doubt that the defendant assaulted the deceased with the specific intent to have carnal knowledge of her person forcibly and against her will; and, as bearing upon the existence of that specific intent, the defendant had the legal right to have the jury, under appropriate instructions, determine as one of the circumstances or facts in the case the question whether the defendant was intoxicated at the time the alleged crimes of robbery, rape and murder were committed, and, if the jury should answer Yes, the degree of the intoxication and its affect upon his capacity to form and entertain a felonious intent to rob the deceased or to have carnal knowledge of her person without her consent and through force and violence, if such be necessary, to accomplish his purpose. *Commonwealth* v. *Hagenlock*, 140 Mass. 125, 127. *People* v. *Koerber*, 244 N. Y. 147, 152. *Director of Public Prosecutions* v. *Beard*, [1920] A. C. 479; 12 A. L. R. 846, and cases collected; annotation, pages 861, *et seq.* *Hopt* v. *People*, 104 U. S. 631, 633. However, we are of opinion that the case at bar in the circumstances disclosed is governed by *Commonwealth* v. *Hawkins*, 3 Gray, 463, wherein, at page 466, it is said by Shaw, C.J.: "A man, because he is intoxicated . . . cannot avail himself of his intoxication to exempt him from any legal responsibility, which would attach to him, if sober"; and by *Commonwealth* v. *Gleason*, 262 Mass. 185, at page 191, where it was said, in substance, that there was no error in refusing the defendant's request "that in determining the defendant's intention [of committing the crime of robbery] the jury should consider whether he was under the influence of liquor." *Commonwealth* v. *Parsons*, 195 Mass. 560, 570.

*Exceptions overruled. Judgment on the verdict.*