COMMONWEALTH vs. DAVID J. PARKER.

Plymouth. November 8, 1994. - May 8, 1995.

Present: LIACOS, C.J., ABRAMS, O'CONNOR, & GREANEY, JJ.

*Practice, Criminal*, Assistance of counsel, Capital case. *Constitutional Law*, Assistance of counsel. *Intoxication. Homicide.*

Statement of the standard of review in a capital case, pursuant to G. L. c. 278, § 33E, of a defendant's claim of ineffective assistance of trial counsel. [245-246]

A defendant convicted of murder in the first degree did not demonstrate that the alleged ineffective assistance of his trial counsel likely affected the jury's conclusion that the defendant's voluntary intoxication did not affect his ability deliberately to premeditate. [245, 246-250]

No reason appeared, on review of a first degree murder conviction, to reduce the conviction to murder in the second degree or to grant a new trial. [250]

INDICTMENT found and returned in the Superior Court Department on October 30, 1984.

The case was tried before *John D. Sheehan*, J.

Motions for a new trial and for an evidentiary hearing were considered in the Supreme Judicial Court for the county of Suffolk by *Nolan*, J.

*John F. Palmer* for the defendant.

*Frank M. Gaziano*, Assistant District Attorney, for the Commonwealth.

LIACOS, C. J. On May 1, 1990, the defendant, David J. Parker, was convicted by a jury of murder in the first degree, and larceny from the person.[1] On appeal, the defendant ar-

---

[1]A jury convicted the defendant of the same crimes in 1985. At the same trial, the defendant's brother, Wayne D. Parker, was convicted of murder in the first degree and unarmed robbery. This court reversed the judgments on grounds not now in issue, and remanded the cases to the Superior Court for a new trial. See *Commonwealth v. Parker*, 402 Mass.

gues that he is entitled to a new trial because his lawyer rendered ineffective assistance of counsel by not thoroughly investigating and presenting a "diminished capacity" defense at trial.[2] He also asserts that this court should exercise its power under G. L. c. 278, § 33E (1992 ed.), to review and reduce the murder conviction to a conviction of murder in the second degree. On review of the record of the case, we conclude that there was no error or omission that would require us to grant the defendant a new trial. We decline also to exercise our extraordinary power under § 33E to revise the murder conviction. We affirm the conviction.

1. *Facts.* We recite some of the facts that the jury could have found, leaving others for discussion as specific issues arise.

The victim, Jose Gomes, was seventy-nine years old at the time of his death. His body was discovered at the bottom of a sand pit in Plympton on May 7, 1984. Gomes died from blunt trauma to the head, which caused a skull fracture and cerebral contusions. He also suffered a fractured nose and hemorrhages about the neck.

The defendant and his brother, Wayne, were the last persons seen with the victim. On May 10, 1984, after police investigation of the murder, the defendant and his brother were taken to the Halifax police station for questioning. Prior to questioning, the police informed the defendant of his

---

333, 345 (1988) (*Parker I*). The brothers were then retried separately. At the second trial, Wayne Parker was convicted of murder in the first degree and unarmed robbery. We affirmed the conviction of murder in *Commonwealth* v. *Parker*, 412 Mass. 353, 360 (1992) (*Parker II*).

At his second trial, the defendant was convicted of murder in the first degree (solely by reason of premeditation), and larceny from the person. The defendant raises no issue on appeal as to the conviction of larceny from the person. Therefore, we need not consider that conviction on appeal. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).

[2]The defendant's case was entered on this court's docket in January, 1991. In February, 1994, the defendant filed a motion for a new trial and a motion for an evidentiary hearing. This court referred those matters to a single justice, who denied both motions. The defendant has appealed from the rulings of the single justice. The defendant's appeal from the denial of his motion for a new trial has been consolidated with his direct appeal.

Miranda rights. The defendant then gave a statement in which he detailed his participation in the killing of Jose Gomes. He agreed to repeat the statement on videotape. The Commonwealth's evidence at the defendant's second trial included the videotaped statement.

According to the videotaped statement, on May 4, 1984, the defendant and his brother had offered to drive the victim to see the ocean. All three men consumed alcohol during the drive, and they stopped at least twice to purchase alcohol. At some point, the victim flashed a large roll of bills, which irritated the brothers. Wayne took the victim's wallet in order to "teach him a lesson." He eventually returned the wallet to the victim. The victim, both before and after the wallet was returned, threatened to call the police and have the brothers "locked up."

The defendant's brother, who was driving, stopped the automobile near a sand pit so that the three men could urinate. The victim again threatened to have the brothers arrested for taking his wallet. In his confession, the defendant stated that he "panicked" and "couldn't think of any other way to stop [the victim] other than to stop him permanently." He began to choke the victim, and continued to do so until he thought the victim was dead. The defendant and his brother then left the scene in the automobile.

Not too far from the murder scene, the brothers became concerned that they had left the victim's body "right out in the open." They returned to the sand pit to conceal the body, and discovered that the victim was still alive. At that point the defendant again choked the victim, and then threw rocks at the victim's head to kill him. The defendant explained that "[h]e was . . . just about all the way up and . . . I couldn't think of any other recourse to take but to finish the stupid mistake that I started, so I . . . choked him again at this point . . . and I tried not to hurt him, and didn't want to be brutal about it [so] I took a rock on the ground and threw it down at his head." The defendant and his brother then took the victim's money and identification cards, and rolled the victim's body down to the bottom of the sand pit. They re-

turned home, where they divided the $212 taken from the body, burned the identification cards, and drank beer until they passed out.

2. *Ineffective assistance of counsel claim.* The defendant first asserts that his trial counsel was constitutionally ineffective in preparing and presenting the defense of "diminished capacity,"[3] and that therefore the defendant is entitled to a new trial. Specifically, the defendant alleges that counsel was ineffective: (1) in failing to elicit the full extent of the defendant's alcoholism and his consumption of alcohol before, during, and after the murder; and, (2) in failing to seek and obtain expert testimony as to the effect of the defendant's intoxication on his ability deliberately to premeditate.[4] The defendant contends that, as a result of these failures, he was deprived of a substantial ground of defense. We disagree.

We traditionally have focused our analysis of the effectiveness of counsel by considering "whether there has been serious incompetency, inefficiency, or inattention of counsel —

---

[3] We note that, while evidence of voluntary intoxication may warrant a reduction in a finding of murder in the first degree to murder in the second degree, there is no "diminished capacity" defense in this Commonwealth. See *Commonwealth* v. *Costello*, 392 Mass. 393, 405 (1984) ("intoxication is not a defense to murder in the first degree"). It appears from the defendant's brief and from counsel's oral argument that the defendant bases his appeal upon this court's decisions holding that the jury may consider voluntary intoxication as it affects a defendant's ability to form the specific intent required for a conviction of deliberately premeditated murder in the first degree. See, e.g., *Commonwealth* v. *King*, 374 Mass. 501, 508 (1978); *Commonwealth* v. *Costa*, 360 Mass. 177, 185-186 (1971); *Commonwealth* v. *Delle Chiaie*, 323 Mass. 615, 617-618 (1949); *Commonwealth* v. *Taylor*, 263 Mass. 356, 362-363 (1928). See also *Commonwealth* v. *Henson*, 394 Mass. 584, 593-594 (1985).

[4] The defendant also asserts that counsel was ineffective in failing to present expert testimony to develop evidence of intoxication in connection with the defendant's renewed motion to suppress his statements. The defendant contends that, as a result of this failure, he was "unable to present any substantial evidence that his alleged waiver of Miranda rights was invalid or that his statement to the police was otherwise involuntary." We discussed this issue in detail in *Parker I, supra,* and concluded that the defendant's statements followed a knowing and intelligent waiver of his constitutional rights and that his statements were voluntary. We find no reason to depart from our earlier conclusion.

behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). However, in reviewing "capital" cases pursuant to G. L. c. 278, § 33E, our standard of review is "even more favorable to the defendant." *Commonwealth* v. *Burke*, 414 Mass. 252, 256 (1993), quoting *Commonwealth* v. *MacKenzie*, 413 Mass. 498, 517 (1992). See *Commonwealth* v. *Wright*, 411 Mass. 678, 682 (1992). In such cases, we do not focus on the adequacy of trial counsel's performance. Instead, we determine "whether there was an error in the course of the trial (by defense counsel, the prosecutor, or the judge) and, if there was, whether that error was likely to have influenced the jury's conclusion." *Commonwealth* v. *Wright, supra* at 682. Under this more favorable standard of review, we consider a defendant's claim "even if the alleged error on the part of trial counsel does not constitute conduct falling 'measurably below' that of 'an ordinary fallible lawyer.' " *Commonwealth* v. *MacKenzie, supra* at 517.[5]

With these principles in mind, we turn to the merits of the defendant's appeal.

The defendant's primary strategy at trial was to claim that his voluntary intoxication prevented him from deliberately premeditating the killing and that therefore he should be convicted only of murder in the second degree. On appeal, the defendant argues that trial counsel should have procured an expert to "relate the Defendant's history of alcoholism and the evidence of intoxication to his inability to 'premeditate.' " He bases this assertion upon the proffered testimony

---

[5]The defendant bases his ineffective assistance of counsel claim on both the United States Constitution and the Massachusetts Declaration of Rights. We have said that the standard for testing such claims under the Federal Constitution is no more favorable to a defendant than the standard under our State Constitution. *Commonwealth* v. *Howell*, 394 Mass. 654, 657 (1985). *Commonwealth* v. *Fuller*, 394 Mass. 251, 256 n.3 (1985). Our review of the defendant's claims pursuant to G. L. c. 278, § 33E, meets, at least, the standards of review mandated by both the Federal and State constitutional provisions relied on by the defendant.

of Dr. Paul Spiers, a clinical psychologist.[6] Specifically, the defendant asserts that Dr. Spiers would have testified that the defendant's behavior was "consistent with [his] history of episodic dyscontrol while drinking," and that the murder was "an impulsive, provoked, reactive act consistent with [the defendant's] lifelong history of alcohol-associated temper problems." In addition, the defendant contends that Dr. Spiers would have testified that the defendant's "actions appear, to a reasonable degree of scientific certainty, to have been impulsive and a result of diminished inhibition and capacity to modulate his behavior as a result of intoxication."

We believe, however, that even expert testimony about the defendant's alcohol consumption would not likely have influenced the jury's conclusion that, at the time of the killing, the defendant had the mens rea necessary for a conviction of deliberately premeditated murder in the first degree. See *Commonwealth v. Blaikie*, 375 Mass. 601, 605 (1978), quoting *Commonwealth v. Tucker*, 189 Mass. 457, 494 (1905) ("where the purpose is resolved upon and the mind determined to do it before the blow is struck, then it is, within the meaning of the law, deliberately premeditated malice aforethought"). The evidence presented warranted the conclusion that the defendant formulated a plan to kill Gomes, and that he carried out that plan. The Commonwealth demonstrated that the defendant and his brother drove the victim to an isolated area to rob him. When the victim threatened to report the brothers to the police, the defendant decided to stop him "permanently" by choking him. The brothers returned to the scene to conceal the body. When they found the victim struggling to stand up, the defendant decided to "finish the stupid mistake I started" by throwing rocks at the victim's head. Having killed the victim, they stripped his body of identification and attempted to conceal the body by rolling it to the bottom of a sand pit. As we stated in *Parker II, supra*

---

[6]Although the trial court authorized funds to hire an expert, trial counsel did not do so. Appellate counsel hired Dr. Spiers for purposes of this appeal, and submitted Dr. Spiers's report both to the single justice and to the full court.

at 360, the "evidence revealed deliberation, resolution, and action." The nature and means of the murder and the attempts to conceal it are inconsistent with a claim of "debilitating intoxication." *Commonwealth* v. *Doucette*, 391 Mass. 443, 456 (1984). Furthermore, one week after the murder, the defendant was able to give the police a detailed statement about the killing. The fact the defendant was able to explain the details of the murder in his confession is indicative of his clarity of mind. See *Commonwealth* v. *Millyan*, 399 Mass. 171, 179-180 (1987). See also *Commonwealth* v. *Bousquet*, 407 Mass. 854, 861 (1990). The "basic trouble from the defense standpoint was weaknesses in the facts rather than any inadequacy of counsel." *Commonwealth* v. *Burke, supra* at 264, quoting *Commonwealth* v. *Mercado*, 383 Mass. 520, 528 (1981). We cannot conclude that trial counsel's decision not to procure expert testimony about the defendant's voluntary intoxication amounted to ineffective assistance of counsel. See *Commonwealth* v. *Millyan, supra* at 180.

Although the defendant contends on appeal that there was only scant evidence of his intoxication presented at trial, the record reveals otherwise. Defense counsel brought evidence of the defendant's intoxication before the jury through cross-examination of several of the Commonwealth's witnesses. In addition, the jury viewed the videotape of the defendant's statement both at trial and in the jury room.[7] That statement included many details about the defendant's consumption of

---

[7]The defendant asserts that trial counsel erred in not calling the defendant to testify at his second trial as he had at his first trial, and that this decision kept from the jury substantial evidence about his alcohol consumption before, during, and after the killing. In light of the fact that the prosecutor at the first trial had elicited much damaging evidence from the defendant on cross-examination, and that the defendant was convicted of murder in the first degree at that trial, we conclude that counsel's decision not to call the defendant to testify was within the bounds of a proper exercise of trial strategy. A defense counsel's strategic decisions do not constitute ineffective assistance of counsel unless they are "manifestly unreasonable." *Commonwealth* v. *Bousquet*, 407 Mass. 854, 863-864 (1990), citing *Commonwealth* v. *Rondeau*, 378 Mass. 408, 413 (1979).

alcohol on the day of the killing and during the following week. Indeed, the videotaped statement presented much evidence concerning the defendant's "besotted condition at the time of the killing of Gomes." The jury heard that the defendant and his brother had a couple of beers in Gomes's apartment, and that they purchased a six pack of beer and a case of beer for the ride. The defendant stated that, because the three had been drinking, they drove back roads to avoid getting stopped by the police. The jury could have reasonably inferred that the defendant had the opportunity to consume alcohol during the ride because the three men stopped the car to "relieve themselves." After the killing, the brothers went home and drank "until we just about passed out." In light of this substantial evidence, we hold that counsel effectively presented to the jury the issue of the defendant's voluntary intoxication.[8]

Furthermore, we note that the judge instructed the jury to consider the defendant's voluntary intoxication in determining whether he had the capacity deliberately to premeditate. We conclude, therefore, that the defendant was not in any way prejudiced by trial counsel's alleged incompetence, nor was he deprived of "an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian, supra* at 96. See *Commonwealth* v. *Adams,* 374 Mass. 722, 729 (1978) ("The test is not to be made with the advantage of hindsight, and any violation of the attorney's duty must be both substantial and prejudicial").

In sum, we believe that even under the more favorable standard of review used in capital cases, the defendant's ineffective assistance of counsel claim must fail. Not only did trial counsel present substantial evidence of the defendant's intoxicated state at the time of the murder, but the judge carefully instructed the jury to consider the defendant's voluntary intoxication in deciding whether he had the capacity deliberately to premeditate. Thus, the defendant has failed to

---

[8]We note that defense counsel emphasized the defendant's voluntary intoxication both in his opening statement and in closing argument.

demonstrate that the alleged ineffective assistance of counsel likely affected the jury's conclusion that his voluntary intoxication did not affect his ability deliberately to premeditate.

· 3. *Review under G. L. c. 278, § 33E.* The defendant further asserts that this court should reduce his murder conviction to murder in the second degree because of his history of problems with alcohol, his intoxication at the time of the murder, and the fact that the murder resulted from a senseless and spontaneous encounter rather than from a planned event. We have reviewed the law and the entire record of this case pursuant to our duty under § 33E. We conclude that there is not a "substantial likelihood that a miscarriage of justice has occurred," and that the jury's verdict was a just one that need not be disturbed. See *Commonwealth* v. *Toney,* 385 Mass. 575, 584 (1982).

*Judgment affirmed.*

*Order denying motion
for a new trial affirmed.*