## COMMONWEALTH vs. PEDRO VALENTIN.

Suffolk. March 6, 1995. - May 8, 1995.

Present: WILKINS, ABRAMS, NOLAN, & GREANEY, JJ.

*Homicide. Practice, Criminal*, Required finding, Jury and jurors, Empanelment of jury, Challenge to jurors, Conduct of prosecutor, Argument by prosecutor, Capital case. *Joint Enterprise. Jury and Jurors. Constitutional Law*, Jury. *Evidence*, Relevancy and materiality, Prior conviction, Prior misconduct.

Evidence at a murder trial was sufficient to warrant findings by the jury that the defendant had knowingly and deliberately combined with another in a joint effort to seek out and to kill the victim for revenge. [266-267]

At a criminal trial, the Commonwealth's use of a peremptory challenge to remove the only person with an Hispanic surname from the jury panel did not violate the defendant's rights, where the judge, after following the recommended procedure, properly concluded that the prosecutor had specifically articulated a legitimate reason for exercising the challenge, namely, that the juror had stated he had language difficulties, which could have prevented him from comprehending and intelligently resolving the issues to be raised at trial. [267-269]

At a murder trial, evidence of the drug activity of the defendant's brother, who was also charged with the murder, was properly admitted, with appropriate jury instructions, as relevant to establish motive and on the issue of the defendant's knowledge and intent as a joint venturer. [269-270]

At a murder trial, two references to the defendant's prior record and misconduct were not sufficiently prejudicial to require the declaration of a mistrial and were adequately dealt with by the judge's cautionary instruction, and thus provided no basis for the grant of a new trial. [270-272]

A defendant convicted of first degree murder did not demonstrate any prejudicial misconduct or misrepresentation on the part of the prosecutor. [272-273]

At a murder trial there was no reversible error in the prosecutor's closing argument, in light of the judge's instructions to the jury. [274-275]

No reason appeared for this court to grant relief under G. L. c. 278, § 33E, either by reducing the verdict of first degree murder to a lesser degree or by granting a new trial. [275]

INDICTMENT found and returned in the Superior Court Department on October 23, 1991.

The case was tried before *John F. Moriarty*, J.

*Shawn C. Salter* (*Frank G. Kelleher* with him) for the defendant.

*Ralph C. Martin*, District Attorney, & *Katherine E. Mc-Mahon*, Assistant District Attorney, for the Commonwealth, submitted a brief.

GREANEY, J. On May 15, 1992, the defendant, Pedro Valentin, was convicted of murder in the first degree by reason of deliberate premeditation.[1] The Commonwealth prosecuted the case on the theory that the defendant and his brother, Simon Valentin, had acted as joint venturers in committing the murder.[2] Represented by new counsel on appeal, the defendant argues that, because the Commonwealth's evidence was insufficient, as matter of law, to convict him of murder as a joint venturer, he was entitled to the allowance of his motion for a required finding of not guilty under Mass. R. Crim. P. 25 (a), 378 Mass. 896 (1979). We conclude that the Commonwealth's evidence was sufficient to warrant the defendant's conviction. The defendant also argues that he is entitled to a new trial because (1) the prosecutor improperly exercised a peremptory challenge to exclude the sole Hispanic person from the jury venire; (2) the judge erred in admitting testimony about Simon's drug activity; (3) he was prejudiced by evidence indicating that he had a prior crimi-

---

[1]The jury declined to find the defendant guilty of first degree murder by means of extreme atrocity or cruelty. The defendant also was acquitted on an indictment charging him with assault and battery by means of a dangerous weapon (shod foot).

[2]Simon Valentin was not arrested until March, 1993. He was tried separately and convicted on February 18, 1994, of murder in the second degree.

nal record and engaged in prior misconduct; and (4) there were instances of prosecutorial misconduct which deprived him of a fair trial. We reject these arguments. Finally, we conclude that there is no basis to exercise our authority under G. L. c. 278, § 33E (1992 ed.), to order a new trial or direct the entry of a conviction of a lesser degree of guilt. Accordingly, we affirm the judgment of conviction.

1. *Required finding.* Based on the Commonwealth's evidence, the jury could have found the following facts. In July, 1991, Angel Ruidiaz was selling crack cocaine for Simon. The victim wanted to buy some crack cocaine from Ruidiaz, but did not have enough money so he stole some cocaine from Ruidiaz. Ruidiaz paid Simon $40 so nothing would happen to Ruidiaz or the victim, but Simon indicated that "he was still going to get [the victim] because [the victim] thought [Simon] was a little punk, a rookie or something." Ruidiaz had seen Simon with a .25 automatic, "chrome, pearl-handled" handgun.

On or about July 2, 1991, a witness for the Commonwealth overheard an argument involving Simon, Ruidiaz, and another person during which a "bad" drug deal involving the victim was mentioned. During the argument, Simon had his hand in the front of his pants. At some point, he pulled out a silver object which looked like a handgun. The defendant was present during the argument.

On July 15, 1991, shortly after 9 P.M., the witness who had overheard the discussion described above was walking toward Metcalf Court in the Jamaica Plain section of Boston. He saw the defendant sitting on a wooden bench under a tree. The witness described the defendant as "look[ing] to me like he was wired and looking around, looking, maybe just watching out, I don't know, being a watch out." When this witness proceeded into Metcalf Court, he saw the victim sitting on a fence with some friends.

Another Commonwealth witness testified that Simon observed the victim arrive at Metcalf Court. Simon then entered 17 Metcalf Court, where his girl friend had an apartment. There was testimony that Simon's girl friend kept a

silver pearl-handled gun for him in her apartment. Shortly thereafter, Simon left 17 Metcalf Court and went around to the back of the building. Several witnesses heard the sound of a single gunshot fired behind the building.

Right after the single gunshot was heard, Simon and the defendant approached the victim, who was conversing with his friends, from behind. Simon put a handgun (described as "a silver gun with white handles") to the back of the victim's head, said "remember me," and shot the victim. After the victim fell to the ground, Simon shot the victim a second time in the temple.[3] The defendant then "stomped [the victim] in the head" and said "Die, motherfucker." The defendant and Simon ran away, and the defendant was overheard telling Simon, "Man, put the gun away, the police are coming." The defendant was not apprehended until October, 1991, in Lawrence.

The defendant presented three witnesses to raise an alibi issue. Each of these witnesses testified that the defendant was playing dominoes outside of Metcalf Court at the time of the shooting.

The defendant argues that, although the Commonwealth offered proof of his presence at the shooting, the evidence left to speculation whether he knew Simon was armed and planned to commit murder and whether he shared with Simon the necessary intent to commit a premeditated murder. There is little force in these contentions. "The test [for joint venture] is whether each defendant was (1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement is willing and available to help the other if necessary." *Commonwealth* v. *Longo,* 402 Mass. 482, 486 (1988), quoting *Commonwealth* v. *Bianco,* 388 Mass. 358, 366, *S.C.,* 390 Mass. 254 (1983). The jury may infer the requisite mental state for a joint venture from the defendant's knowledge of the circumstances and his subsequent par-

---

[3]The medical examiner testified that either of the gunshot wounds would have been fatal.

ticipation in the crime. *Id.* The jury, as they were entitled to, rejected the testimony of the defendant's witnesses that he was playing dominoes when the murder occurred and accepted the Commonwealth's theory that the defendant had participated in a planned execution. We think the sequence of events set forth above was sufficient to warrant findings by the jury that the defendant had knowingly and deliberately combined with Simon in a joint effort to seek out and to kill the victim to avenge the victim's theft of drugs from Simon's agent. See *Commonwealth* v. *Champagne*, 399 Mass. 80, 87 (1987). The evidence warranted the jury in concluding that once the defendant and Simon spotted the victim, Simon retrieved and tested his handgun. Several witnesses testified that the brothers came out from behind the building together, from which it could be inferred that the defendant was present when Simon tested the gun, knew of his intention, and went with Simon to provide a measure of protection from the friends of the victim who were present. The defendant was not surprised by the shooting; instead, he expressed satisfaction at the victim's death. The defendant's motion for a required finding of not guilty was correctly denied.[4] See *Commonwealth* v. *Noble*, 417 Mass. 341, 346-347 (1994); *Commonwealth* v. *Daughtry*, 417 Mass. 136, 138-141 (1994).

2. *Peremptory challenge.* During the empanelment process, the prospective jurors were told the trial would last approximately one week, and they were asked whether the length of the trial might pose a hardship. In response to this question, one juror, who had an Hispanic name, had the following discussion with the judge:

---

[4]The Commonwealth's case had not deteriorated at the close of all the evidence. The issue of the defendant's presence raised by the testimony in his case of the alibi witnesses created a conflict in the evidence which was for the jury to sort out and was not material to the required finding issue. See *Commonwealth* v. *McGahee*, 393 Mass. 743, 750 (1985). The defendant's renewed motion for a required finding of not guilty at the close of all the evidence was also correctly denied.

THE JUROR:        "I think I do have some difficulties with, like, English or understanding or speaking the English."

THE JUDGE:        "I see. You're having trouble understanding what's going on here?"

THE JUROR:        "Yes. I would like to serve but, like I said, sometimes I don't understand very much."

THE JUDGE:        "Have you been able to understand everything that's been said so far?"

THE JUROR:        "Well, some of those words, for example, my uncles was killed in my country but I wasn't there. I was here.[5]"

THE JUDGE:        "Do you think that's something that might influence your decision?"

THE JUROR:        "Not necessarily, but I like to serve. If I don't understand very well everything, whatever, I'm going to choose —"

THE JUDGE:        "Well, if you find you are having trouble, if you are chosen to sit, if you find you are having trouble, let me know that through the court officer, but you stay with us. We'll try it."

Subsequently, the prosecutor exercised a peremptory challenge to remove the juror, and, after objection by the defendant's trial counsel, explained the challenge as follows: "Judge, I will . . . give you the reason for it. It's just the reason stated by the same juror when you were asking the initial questions where he stated that he had problems understanding English, that he did have problems understanding English. I noticed that he did have problems understanding and I would ask that he be excused from the jury based on that." The judge accepted the prosecutor's reason, and his challenge over objection by the defendant's trial counsel. The defendant argues that the Commonwealth's use of a peremp-

---

[5]This statement was in response to a question asked by the judge earlier as to whether any prospective juror, or members of their immediate families, had been victims of violence.

tory challenge to remove the sole Hispanic person from the jury violated his Federal and State constitutional rights, which prohibit the use of peremptory challenges to exclude prospective jurors solely because of their membership in a discrete group. See *Commonwealth* v. *Hamilton*, 411 Mass. 313, 316 (1991). We disagree.

The judge followed the recommended procedure for assessing the validity of a questioned peremptory challenge. See *Commonwealth* v. *Burnett*, 418 Mass. 769, 770-771 (1994). It was for the judge to decide whether the reason for the challenge offered by the prosecutor was bona fide or a pretext, *id.* at 771, and the judge's determination is entitled to substantial deference on appeal. *Id.*

The judge properly concluded that the prosecutor had specifically articulated a legitimate reason for exercising the challenge. The prospective juror's discussion with the judge indicated that the juror had language difficulties that could prevent him from comprehending, and intelligently resolving, the issues to be raised at trial. Both sides were entitled to jurors who could adequately understand and evaluate the testimony, deal with the central question of credibility, and grasp and apply complex concepts such as joint venture, premeditation, and malice. See *Commonwealth* v. *Caldwell*, 418 Mass. 777, 781 (1994). That no Hispanic person ultimately sat on the jury is not dispositive. The defendant's right to a jury selected on a nondiscriminatory basis was not violated. Contrast *Commonwealth* v. *Vann Long*, 419 Mass. 798 (1995).

3. *Evidence of Simon's drug activity.* By a motion in limine, the defendant sought to exclude evidence of Simon's drug activity. That evidence, it will be recalled, concerned the victim's theft of drugs from Ruidiaz, Simon's reaction to the theft, and the defendant's presence at an argument involving Simon, Ruidiaz, and a third person, during which the "bad" drug deal and the victim's involvement were mentioned. The judge found that the evidence was relevant to the issue of joint venture. The evidence also tended to establish

the motive for the murder. The defendant argues that the evidence was irrelevant and prejudicial.

"Evidence is relevant if it has a rational tendency to prove a material issue. Whether evidence is relevant in any particular instance, and whether the probative value of relevant evidence is outweighed by its prejudicial effect, are questions within the sound discretion of the judge. . . . [T]he judge's determination of these questions will be upheld on appeal absent palpable error" (citations omitted). *Commonwealth* v. *Dunn*, 407 Mass. 798, 807 (1990). It was well within the judge's discretion to admit the evidence of Simon's drug dealing, of the victim's theft of drugs from Simon's agent, and of the argument. This evidence was probative on the motive for the murder and on the defendant's knowledge and intent as a person charged with participation in a joint venture. The judge also gave a limiting instruction in the final charge to counter any suggestion that the defendant was a drug dealer and to assist the jury in their evaluation of the evidence.[6] There was no error.

4. *Evidence of the defendant's prior record and misconduct.* The defendant refers to two occasions at the trial which he contends led to the admission of testimony so prejudicial that a new trial is required. The first reference is to the testimony of Detective Robert Tinlin of the Boston police department who indicated that a witness had selected the defendant's photograph from an array of six photographs. When asked by the prosecutor the number of this photograph,

---

[6]The judge told the jury the following:

"The suggestion was made that there might have been some evidence indicating that the defendant was involved in some other crime. Well, I want to emphasize that the defendant is not on trial for any act or conduct not alleged in the indictments. He is on trial for that and for that alone. If you heard any evidence of that nature, you may not consider that evidence in determining guilt, rather, for whatever purpose it may have been introduced. I want specifically to say that there is no evidence in this case that would warrant you finding that this defendant was in any way involved in the sale of narcotic drugs, even though there was some reference to narcotic drugs in the course of the evidence, I believe on the part of his brother, but again, it is your memory that must control, but no evidence would warrant such inference against this defendant."

Detective Tinlin stated that the photograph was from the Boston police department and "[t]he number was 36204." This brought a motion for a mistrial which was denied. The defendant argues that the detective's testimony made the jury aware that the photograph was from the police files, thereby indicating that the defendant had a prior criminal record.

The second reference concerns the testimony of Sergeant William Coulter of the State police. Sergeant Coulter testified that in October, 1991, he was assigned to the city of Boston to serve warrants on fugitives. When asked if he was "made aware of two warrants out for the defendant . . . and his brother," Sergeant Coulter responded that there were two warrants for the defendant from the West Roxbury District Court — "[o]ne was for murder, one was for malicious destruction of some type of property." There was an objection. The judge asked the defendant's trial counsel for her suggestion to cure the problem. Counsel declined an immediate instruction because of the risk that it would highlight for the jury the possibility that the defendant had a criminal history. Instead, counsel requested "an announcement at the end of all the evidence telling [the jury] that they are not to consider any other charges or any allegations that haven't been proved against my client." The judge indicated that he would give an instruction and covered the point with the instruction set forth at note 6, *supra*. The defendant now argues that the instruction was not sufficient to dispel the jury's awareness that he "had a prior record or that he had been involved in prior misconduct."

Neither response given by the police witnesses was a product of improper direct solicitation by the prosecutor.[7] The lapse by Detective Tinlin was unfortunate. The judge, how-

[7]In asking Detective Tinlin about the number of the photograph, the prosecutor was most likely inquiring about the number (one through six) of the defendant's photograph in the array shown to the identifying witness. In asking Sergeant Coulter about two warrants, the prosecutor sought to have the witness describe the murder warrants issued for the defendant and Simon.

ever, acted within his discretion in concluding that the information conveyed by the testimony was not sufficiently prejudicial to require declaration of a mistrial. See *Commonwealth* v. *Maldonado*, 389 Mass. 626, 629 (1983). The misstatement by Sergeant Coulter was fleeting and not one, in our opinion, which would command the jury's attention in deliberations. Both missteps were adequately dealt with, in the framework of the much larger trial, by the cautionary instruction given by the judge. See note 6, *supra.* That instruction was responsive to the remedy suggested by the defendant's capable trial counsel (which deliberately avoided calling the jury's attention to the statements) and drew no objection or request for further elaboration from her. We conclude that this issue provides no basis for a new trial.

5. *Alleged prosecutorial misconduct.* (a) During a pretrial hearing on a motion by the defendant to exclude evidence of Simon's drug activity, the prosecutor told the judge that Ruidiaz would testify that Simon had decided to execute the victim because he had stolen cocaine belonging to Simon from Ruidiaz. According to the prosecutor, "Simon Valentin and his brother then carried out this particular execution as a result of this, this drug dealing." The judge relied on the prosecutor's statement to deny the defendant's motion.

At the trial, one of the Commonwealth's witnesses testified that the defendant had been present at an argument involving Simon, Ruidiaz, and a third person over a bad drug deal during which Simon had displayed what appeared to be a handgun. The defendant's trial counsel objected on the basis that this information had not been disclosed to her. The prosecutor indicated that he had not expected the witness to testify that the defendant had been present at the argument.

The defendant focuses on these two parts of the trial to allege prosecutorial misconduct. The defendant claims that the prosecutor's statement at the pretrial hearing must have been false because evidence of the defendant's presence at the argument over the bad drug deal was stated by the prosecutor to have come as a surprise to him. As to that testimony, the defendant asserts that the prosecutor's inadequate

preparation of the witness who gave the testimony constitutes additional misconduct and caused unexpected prejudicial testimony that the defendant's trial counsel could not properly defend against.

As to the latter point, the judge appears to have accepted the prosecutor's representation that he had spoken with the witness only immediately before the trial, that there was no police report concerning the witness, and that the witness's testimony about the defendant's presence at the argument caught the prosecutor unaware. There was no request made by the defendant's trial counsel for a continuance to investigate or to refute the testimony. There is no showing of how the defendant's trial strategy, which was centered on alibi, might have changed had the defendant's trial counsel known about the testimony. The existence of prejudicial misconduct on the prosecutor's part has not been demonstrated.

Nor has prejudicial misconduct on the prosecutor's part been demonstrated with respect to the claim that the prosecutor made a false representation at the pretrial motion hearing. A fair reading of the record of that hearing indicates that the prosecutor was only outlining to the judge before trial, in broad terms, what the Commonwealth's proof would be, and that the Commonwealth expected to show that the defendant and Simon had acted as joint venturers in dealing harshly with the victim's theft of Simon's drugs from Ruidiaz. The discussion of the anticipated evidence appears to have been fairly predicated on what the prosecutor believed Ruidiaz's testimony would be and inferences that could reasonably be drawn therefrom. The prosecutor did not require testimony of the defendant's presence at the argument to prove that the defendant shared Simon's criminal intent. It was sufficient to prove that Simon had a motive for the victim's murder, and that the defendant was willing and able to assist, and did assist, his brother. This was what the prosecutor represented the evidence would show, and this is what the evidence did show. There was no misconduct or misrepresentation.

(b) The defendant also claims that two portions of the prosecutor's closing argument, which were objected to, require a new trial. We disagree.

In the first challenged portion, the prosecutor suggested to the jury that "Ruidiaz knew the capability of not only Simon Valentin but, I suggest his brother also," that Simon and the defendant "were going to show [the] neighborhood . . . you don't mess with us," and that Simon and the defendant had decided at the time of the argument involving Simon, Ruidiaz and a third person that the victim was going to die. We do not consider these remarks as departing far from what could be considered reasonable inferences that could be drawn from the evidence. Any potential for improper construction of the prosecutor's remarks by the jury to suggest that the defendant and Simon were jointly engaged in drug activity was cured by the judge's cautionary instruction, see note 6, *supra*, and his additional instructions concerning the role of closing argument and the function of the jury as the ultimate arbiter of the facts.

In the second challenged portion, the prosecutor asked the jurors to consider how they would feel if they had been two Commonwealth witnesses who had seen the victim shot by Simon in their presence. One witness was a friend of the victim and the other had been the victim's brother-in-law. The remarks appear to have been intended by the prosecutor to afford an explanation for inconsistencies in the testimony of one of them, and to downplay the fact that the other witness had been arrested on the night of the murder for being a disorderly person. The prosecutor's suggestion, in effect that the jurors put themselves in the shoes of the two witnesses, was poorly phrased, and the argument should not have been made. We think the thrust of the argument was plainly apparent, and the jury could not have understood it for anything more than a rhetorical effort on the part of the prosecutor to explain that testimony about the conduct of the witnesses after the murder had been affected by the stress of what they had seen. Based on this, and the judge's instructions which focused the jury on the proper consideration of

the evidence apart from the closing arguments of counsel, we discern no reversible error.

6. *Review under G. L. c. 278, § 33E.* We have examined the record under the obligation imposed on us by G. L. c. 278, § 33E, to ensure that the verdict is not against the weight of the evidence and is consonant with justice. We do not agree with the defendant that the evidence of premeditation is "thin." The evidence, in our view, was more than adequate to support a conclusion by any reasonable factfinder that the defendant and Simon engaged in the planned execution of the victim. The fact that Simon was found guilty only of murder in the second degree at his separate trial also does not warrant § 33E relief for the defendant. The defendant's culpability rests on what was proved at his trial, and as has been mentioned, that proof was sufficient to establish his participation in a cold-blooded murder. See *Commonwealth* v. *Burke*, 414 Mass. 252, 268 n.14 (1993) (declining to reduce first degree murder verdict where other participant was convicted of murder in the second degree); *Commonwealth* v. *Todd*, 408 Mass. 724, 729-730 (1990) (declining to reduce first degree murder verdict where accomplice who actually stabbed victim was convicted of manslaughter); *Commonwealth* v. *Brown*, 378 Mass. 165, 173 (1979) (disparity in verdicts returned by separate juries in trials of accomplices generally does not warrant § 33E relief).

*Judgment affirmed.*