COMMONWEALTH *vs.* WILLIAM J. ALLEN.

Plymouth. September 8, 1999. - October 14, 1999.

Present: ABRAMS, LYNCH, GREANEY, MARSHALL, & IRELAND, JJ.

*Felony-Murder Rule. Homicide. Duress. Practice, Criminal,* Assistance of counsel, Instructions to jury, Capital case.

A criminal defendant did not demonstrate that, at his trial on an indictment for murder in the first degree, his trial counsel's failure to present a duress defense constituted an error that created a substantial likelihood of a miscarriage of justice. [255-258]

At the trial of an indictment for murder in the first degree on a felony-murder theory with unarmed robbery as the underlying felony, an instruction to the jury on the proximate cause of death would have been superfluous and confusing, where the evidence did not raise that issue. [258]

INDICTMENTS found and returned in the Superior Court Department on June 27, 1994.

The cases were tried before *Judith A. Cowin,* J.

*Carlo A. Obligato,* Committee for Public Counsel Services, for the defendant.

*Robert C. Thompson,* Assistant District Attorney, for the Commonwealth.

GREANEY, J. A jury in the Superior Court convicted the defendant of armed robbery while masked and felony-murder in the first degree as a joint venturer in the robbery.[1] Represented by new counsel on appeal, the defendant argues that his trial counsel provided him with ineffective assistance because counsel failed to pursue, or to seek a jury instruction on, the issue of duress. The defendant also argues that the trial judge erred by failing to instruct the jury that, in order to find the defendant guilty of felony-murder, they had to find that the victim's death was a natural and probable consequence of the

---

[1]The conviction of armed robbery while masked was placed on file with the defendant's consent and is not before us on appeal. See *Commonwealth* v. *Freeman, ante* 111, 112 n.1 (1999).

armed robbery. We conclude that there is no basis to set aside the jury's verdict. We also conclude, after examining the record of the trial pursuant to G. L. c. 278, § 33E, that there is no reason to order a new trial or reduce the defendant's conviction of murder to a lesser degree of guilt.

Because the strength of the Commonwealth's case has pertinence to the defendant's claim concerning the performance of his trial counsel, we set forth the facts that the jury could have found based on the Commonwealth's evidence. The defendant and Rolando "Mike" Perry decided on the night of February 7, 1994, to rob Purvis Bester. In furtherance of this plan, the two men borrowed a truck which they drove to Bester's apartment, both dressed in black, with gloves and identical black ski masks. Both men carried knives; the defendant's looked like a "little machete." The defendant drove the truck to Bester's street and waited while a third man, Joel Hampton, posted on the corner, informed Perry that Bester was "pumping" (selling crack cocaine). Hampton also told Perry that he had heard women's voices coming from the apartment. Nevertheless, the defendant and Perry, both wearing gloves and ski masks, proceeded to the front door of Bester's apartment. The defendant stood to the side, hidden from view of whoever opened the door, while Perry knocked. When Bester answered the knock, the defendant and Perry burst into the apartment, knives in hand. Both men, shouting, "Where's the shit at," attacked Bester. Then, while Perry stabbed Bester, the defendant, still holding his knife, turned to several women and ordered them into the bathroom. One woman had a knife and a can of aerosol spray, which she had grabbed for protection. Holding his knife to her throat, the defendant ordered her to drop the knife and can. The defendant then told the women to empty their pockets. The women had nothing but a dollar bill, which the defendant did not take. At this time Bester, covered with blood, was groaning on the floor of the next room. Both men ransacked the apartment, then ordered the women out of the bathroom to ask for money. Perry stood over Bester and, bloody knife in hand, said, "I should finish you off. I should kill you." The defendant took a camera case and a police scanner, and both men ran out of the apartment. Before they left, both men said, "Don't let us catch you bitches on our block," in an angry and threatening tone.

Perry and the defendant then got back in the truck. They

stopped to pick up Hampton. The defendant told Hampton that if he said anything he would "find" him. The three men drove directly to the apartment of Donald Webster, the truck's owner. Hampton described the men as "happy" and "bragging."

According to Webster, the defendant and Perry were excited when they arrived at his home. Perry said that he stabbed someone three times over $50. Then Perry, covered with blood and still holding a bloody knife, went straight to the bathroom to wash. When a transmission came over the police scanner which the defendant held, the defendant said, "The mother fucker must have called. They're on their way." The defendant handed Webster the camera he took from Bester's apartment and jokingly told him to take a picture. The defendant, Perry, and Hampton left with Webster's truck, which the defendant said Webster would get back when he paid them the money he owed him (for crack cocaine purchased the night before). After dropping Hampton off at his home, the two men went to the defendant's home. Later that morning, the two men drove the defendant's sister to school, went out for breakfast, went to a bowling alley to play video games, and visited a girl friend of Perry. Later that night, in response to Webster's page, the defendant returned the truck to its owner.

1. We turn to the defendant's claim that, as his brief puts it, his "rights to effective assistance of counsel and to a fair trial were denied when [trial] counsel pursued a theory of defense (withdrawal) for which there was no legal or factual basis, while he failed to argue the theory (duress) for which a basis did exist, thus leaving the jury unaware that the defendant must be acquitted as a joint venturer in the felony murder if he participated in the underlying felony because the principal [Perry] had forced him to do so." In arguing that duress was an issue, the defendant refers to the following evidence. The plan to rob Bester was Perry's idea. Although the defendant initially joined in the venture and drove the truck that night, he participated in the robbery because Perry forced him to. As the two men sat in the truck before going into Bester's apartment, the defendant told Perry that he did not want to go through with the robbery. Perry pointed his knife at the defendant and responded, "You're going to do it. You have no choice." Knowing that Perry was violent, and afraid to say no, the defendant responded, "All right," and donned his ski mask. Then again, the defendant told Perry that he did not really want to go

through with the robbery, but Perry repeated, "You're going to do it." Perry assured the defendant that no one was going to get hurt. The defendant testified that he then participated in the robbery out of fear that Perry would harm him if he refused. On entering the apartment, Perry began fighting with Bester, while the defendant just stood there. Perry ordered him to "[g]o see who is in the f——ing house." Perry told the defendant to search the women in the bathroom. When the defendant asked the women if they had anything, one woman offered a dollar bill. The defendant told her to keep it. While the defendant was in the bathroom he could hear fighting, but could not see what was going on. It was not until he came out of the bathroom that the defendant saw Bester, lying bloody on the floor, with Perry standing over him with a bloody knife. Perry was in a rage, shouting, "Where's the stuff?" The defendant testified that he did not try to stop Perry because he was nervous and afraid. There was testimony that the defendant looked "scared" in the apartment. There was additional testimony which would have warranted findings by the jury that the defendant conducted himself in the apartment in a manner which might avoid responsibility as a participant in the armed robbery.

Because this is a case of murder in the first degree, we do not analyze the defendant's claim under the traditional test for determining whether trial counsel was ineffective. Rather, we inquire whether there was any error or serious failure by trial counsel and, if there was, whether the error or failure created a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Cormier*, 427 Mass. 446, 451 (1998). *Commonwealth* v. *Wright*, 411 Mass. 678, 681-682 (1992). As stated in *Commonwealth* v. *Ruddock*, 428 Mass. 288, 292 n.3 (1998), in deciding whether a trial error or failure created a substantial likelihood of a miscarriage of justice, "a new trial is called for unless we are substantially confident that, if the error [or failure] had not been made, the jury verdict would have been the same."

We discussed duress with respect to serious crimes such as joint venture felony-murder in *Commonwealth* v. *Robinson*, 382 Mass. 189 (1981). We defined duress in the following terms:

> " '[D]uress' is usually taken to require a present, immediate, and impending threat of such a nature as to induce a well-founded fear of death or of serious bodily injury if the criminal act is not done; the actor must have been so

positioned as to have had no reasonable chance of escape. See *R.I. Recreation Center, Inc.* v. *Aetna Cas. & Sur. Co.,* 177 F.2d 603, 605 (1st Cir. 1949); *Shannon* v. *United States,* 76 F.2d 490, 493 (10th Cir. 1935). See also Annot., Coercion, Compulsion, or Duress as a Defense to Criminal Prosecution, 40 A.L.R.2d 908, 910-911 (1955). He must have been put in a condition of mind where neither he nor a person of reasonable firmness could have acted otherwise in the circumstances. *United States* v. *Haskell,* 26 F. Cas. 207, 210 (C.C.E.D. Pa. 1823) (No. 15,321); *Powe* v. *State,* 176 Miss. 455, 461 (1936). See also Model Penal Code § 2.09(1) (Proposed Official Draft 1962)."

*Id.* at 199-200. We went on to note that duress "is not a refuge if the [defendant] places himself recklessly in a situation where the coercion will probably be applied." *Id.* at 200 n.11. We also acknowledged the disagreement in the States over whether duress should be available as a defense to a defendant charged with murder,[2] but we assumed for purposes of decision that, even with regard to murder, a defendant, in carefully defined circumstances, may invoke a claim of duress. *Id.* at 200. We shall make the same assumption in the present case.

The defendant's claim that duress was his only available defense is not persuasive. On the evidence considered in the light most favorable to him, the defendant (at the very least) acted recklessly by placing himself in a position in which, after agreeing to join Perry in committing armed robbery while masked, he could become subject to coercion by Perry if he changed his mind when the time came to execute the crime. If the defendant had offered the issue of duress for jury consideration, the judge properly might have rejected the proffer because the defendant came within the exception set forth above.[3] For

---

[2]We pointed out that most States have dealt by statute with the issue whether duress should be excluded as a defense to a serious crime or any crime. See *Commonwealth* v. *Robinson,* 382 Mass. 189, 201-202 & nn.15-16 (1981). The Legislature may wish to consider the issue either as a separate matter or in connection with a new criminal code to revise and update many of our antiquated common-law concepts.

[3]In *Commonwealth* v. *Robinson, supra* at 200 n.11, we cited the Model Penal Code and other authority to support the exception. As the comment to § 209(2) of the Model Penal Code states: "The point can be illustrated by a purposeful murder, with a claimed duress defense. If the actor recklessly

all that we know,[4] the defendant's trial counsel may have appreciated that duress was probably not a tenable issue and, accordingly, did not press it directly.

Contrary to the defendant's argument, trial counsel did present a vigorous and realistic defense based on the available facts. The defense aimed at showing that (a) the Commonwealth's witnesses to the armed robbery, for various reasons, should not be considered credible; (b) the defendant abandoned the venture and told Perry that he did not want to commit the robbery; (c) the defendant was threatened by Perry to continue; and (d) the defendant had no active involvement in killing Bester or in the robbery. The defendant's trial counsel executed this defense through careful cross-examination of the Commonwealth's key witnesses that sought to minimize the defendant's role in the armed robbery once the apartment was invaded, and through the defendant's testimony, and other evidence, which suggested that the defendant had effectively disclaimed the venture and did not participate in the crimes, even though he was present when Perry committed them.[5] The goal of the defendant's trial counsel was to create a reasonable doubt on the critical issue whether the defendant intentionally and voluntarily participated in the armed robbery to the degree

exposed himself to the duress, by participating with others in a felony while armed, he would thereby be deprived of the defense and could be convicted of a purposeful murder." ALI Model Penal Code and Commentaries § 2.09 comment 3, at 379 n.48 (1985). This illustration is close to what we have in this case with respect to the defendant's relationship with Perry.

[4]The defendant's claim is presented on the trial record without the benefit of the factual amplification that might have occurred if a motion for a new trial had been filed and heard. We look to the trial record itself to analyze the defendant's claim, a situation which does not favor him if the record discloses that his trial counsel presented a reasonable defense. Cf. *Commonwealth* v. *Waite*, 422 Mass. 792, 807 (1996) ("Many ineffective assistance claims have a prerequisite showing, e.g., no tactical reason for the action or inaction of counsel, *Commonwealth* v. *Parker*, 420 Mass. 242, 248 n.7 [1995], that demands factfinding. Cf. Mass. R. Crim. P. 30 (c), as appearing in 420 Mass. 1502 [1995]").

[5]It is not correct, as the defendant's appellate counsel argues, that the defense of withdrawal was not available to the defendant. The defendant could have argued on the evidence that he had withdrawn from the joint venture appreciably before the crimes were committed, that Perry had notice of his detachment, and that his presence at the scene did not negate abandonment. See *Commonwealth* v. *Fickett*, 403 Mass. 194, 200-201 (1988). The judge in this case concluded that withdrawal was an issue for the jury to decide and instructed them on the issue.

necessary to convict him as a joint venturer. The entire theme of the defense was forcefully argued to the jury by trial counsel in his closing argument and emphasized by the judge's instructions (which trial counsel both sought and anticipated) which stressed, time and again, that the defendant could not be convicted of felony-murder as a joint venturer, if the jury did not conclude beyond a reasonable doubt that he acted freely and fully with Perry in committing the crimes. After consideration of the strength of the Commonwealth's case, the likely unavailability of the defense of duress, the practical defense presented by the defendant's trial counsel, and the judge's instructions, including an instruction on manslaughter that the defendant may not have been entitled to, we conclude that the defendant has not demonstrated any real failure on the part of his trial counsel, and, therefore, that there is no basis to conclude that a substantial likelihood of a miscarriage of justice may have occurred.

2. We reject the defendant's argument that there must be a new trial because the jury instructions did not include an instruction that required a finding that Bester's death was a "natural and probable consequence" of the armed robbery. Such an instruction is necessary where the evidence raises a legitimate question that a victim's death was proximately caused by the felony underlying the felony-murder charge. See generally *Commonwealth* v. *Nichypor*, 419 Mass. 209, 215 (1994); *Commonwealth* v. *Ortiz*, 408 Mass. 463, 469 (1990); *Commonwealth* v. *Matchett*, 386 Mass. 492, 505 (1982). But no such question exists when, as here, the victim of an armed robbery, an inherently dangerous common-law felony, is killed during the commission of the robbery. In this situation, instructing the jury on proximate cause would be superfluous and might confuse them as they deliberated the elements of felony-murder. For this reason, this court's Model Jury Instructions on Homicide at 15-16 (1999) omit instruction on proximate cause as an element of felony-murder in the first degree, requiring the instruction only when the evidence necessitates an explanation.

3. There is no reason to grant the defendant any relief pursuant to G. L. c. 278, § 33E. His culpability is based on what was proved at trial, and the proof was more than sufficient to

establish beyond a reasonable doubt his participation in a brutal murder.[6]

*Judgment affirmed.*

---

[6]It is not relevant to our inquiry under G. L. c. 278, § 33E, that, according to the defendant, Perry was allowed to enter a guilty plea to murder in the second degree. *Commonwealth* v. *Valentin*, 420 Mass. 263, 275 (1995).