COMMONWEALTH vs. DAVID W. ROSADO.

Bristol. February 9, 2001. - May 18, 2001.

Present: GREANEY, IRELAND, SPINA, & CORDY, JJ.

*Practice, Criminal,* Assistance of counsel, Instructions to jury, Capital case. *Constitutional Law,* Assistance of counsel. *Intoxication. Proximate Cause. Joint Enterprise. Homicide. Evidence,* State of mind, Inference.

At a murder trial, a defendant was not denied effective assistance of counsel by his counsel's failure to investigate the possibility of presenting expert testimony concerning the defendant's intoxicated condition, which failure allegedly deprived him of an otherwise viable mental impairment defense, where the jury's verdict was not likely to have been influenced by an expert advocating a mental impairment theory. [200-202]

At a murder trial in which the defendant contended that the victim survived the defendant's beating but was suffocated by the defendant's companion, the judge properly instructed the jury that conduct is a proximate cause of death if, by the natural and continuous sequence of events, the conduct caused the death and without which the death would not have occurred; where the intervening conduct of the defendant's companion was foreseeable, and the jury heard sufficient evidence to support a finding of a joint venture to kill the victim, the judge did not err in not instructing on superseding cause of death. [202-204]

At a murder trial, the judge did not err in failing to instruct on voluntary manslaughter and mitigating circumstances, where such an instruction was not warranted because no reasonable jury could possibly find any of the mitigating factors justifying a reduction from murder to manslaughter. [204-205]

At a murder trial, the judge's error in failing to give an instruction requested by the defendant that the jury may consider a defendant's intoxication on the issue of whether the killing was committed with extreme atrocity or cruelty did not require a reduction in the degree of murder or new trial, where the defendant was not prejudiced by the omission. [205-207]

There was no error in a judge's instructing first on the elements of murder in the second degree and then on the elements of murder in the first degree, where there was no possibility that a reasonable juror could have misunderstood the instructions. [207-208]

At a murder trial, the judge's instructions to the jury on inferences were sufficient, where the instruction adequately conveyed the nature of the inference-drawing process. [208-209]

At a murder trial, the judge's instruction on unlawful act manslaughter did not create a substantial likelihood of a miscarriage of justice. [209]

INDICTMENT found and returned in the Superior Court Department on January 24, 1996.

The case was tried before *Charles J. Hely*, J., and motions for a new trial and for funds were heard by him.

*Emanuel Howard* for the defendant.

*Daniel J. McColgan*, Assistant District Attorney, for the Commonwealth.

IRELAND, J. A jury convicted the defendant, David W. Rosado, of murder in the first degree on a theory of extreme atrocity or cruelty. In a separate trial, Kevin M. Babbitt also was convicted of murder in the first degree of the same victim.[1] On appeal,[2] the defendant alleges (1) that trial counsel's failure to investigate the possibility of presenting expert evidence concerning the defendant's mental condition constituted ineffective assistance of counsel; and (2) that several errors tainted the judge's instructions. After reviewing these contentions and the entire record, pursuant to G. L. c. 278, § 33E, we affirm the conviction and decline to grant a new trial or a reduction of the degree of guilt.

I. *Background.*

The jury heard evidence substantially similar to that set forth in *Commonwealth* v. *Babbitt*, 430 Mass. 700, 702 (2000).[3] We present only a cursory factual background here and offer more details when necessary to resolve the defendant's claims of error. In the middle of January, 1995, Babbitt and the defendant, two white males, had a loud party in the motel room in which they lived. The two were vocal exponents of White Supremacy. Their neighbor, an African-American man, pounded on the wall from next door and yelled for them to turn down the music. In response, the defendant turned up the volume and shouted racial epithets and violent threats to the person in the adjacent room.

---

[1] *Commonwealth* v. *Babbitt*, 430 Mass. 700 (2000).

[2] We consider the defendant's direct appeal as well as the denial of his motion for a new trial and his amended motion for funds.

[3] The major difference between the two trials lies in Rosado's decision to testify in his own defense. His version of the events leading up to the victim's death are discussed in the context of his claims of error. During the course of his testimony he acknowledged that he participated in the beating, was present during Babbitt's suffocation of the victim, and assisted in the burial of the victim's body, but denied killing the victim.

Although the timing and specifics of the ensuing events were the subject of some dispute, the evidence suggests that the defendant barged into the victim's room and, with the assistance of Babbitt, inflicted a brutal physical beating on the victim. The trial testimony indicated that the beating began in the victim's room, but ultimately moved to the cement parking lot outside the motel. The witnesses described Babbitt and the defendant kicking and punching the victim repeatedly. When that beating ended, the two dragged the victim back to his room where he remained, unable to move or seek help, for several days.

Some days later, the defendant, Babbitt, and another motel resident, Steven Richard, went to the victim's room and saw him lying on his bed, naked with foam coming out of his mouth and white mucous on his lips. After rejecting a suggestion to seek medical attention for the victim, Babbitt — with the defendant and Richard present — put a pillow over the victim's head and "leaned on it." The defendant, Babbitt, and Richard then carried the victim's body and deposited it in a shallow grave in the woods behind the motel. On March 1, 1995, the police recovered the victim's body and a medical examiner concluded that the cause of death was blunt trauma to the head. Several witnesses reported hearing statements from the defendant regarding his participation in the beating, killing, and burial of the victim. In his defense, the defendant asserted that Babbitt's suffocation of the victim constituted an intervening, unforeseeable event capable of breaking the chain of criminal culpability arising from the initial beating. Under this theory, the defendant acknowledged his participation in the beating and the burial, but denied any role in the actual murder.

To the extent it informs our assessment of the defendant's claims, we briefly mention the joint venture theory proffered by the Commonwealth. The jury heard strong evidence to conclude that the defendant and Babbitt entered into a joint enterprise to murder the victim. The joint venture spanned from the initial beating to the burial and remained viable at all relevant times, including Babbitt's suffocation of the victim. See *Commonwealth* v. *Perry*, 432 Mass. 214, 224 (2000) (facts supported submission to jury on theory that defendant engaged in ongoing joint venture over extended period of time).

II. *Trial Counsel's Failure To Investigate.*

The defendant claims that trial counsel's failure to investigate the possibility of presenting expert testimony concerning the defendant's intoxicated condition deprived him of an otherwise viable mental impairment defense, and contravened his constitutional right to effective counsel. Prior to trial, trial counsel learned of the defendant's habitual intoxication and related history of aggressive behavior, but, according to the defendant, did not effectively incorporate such information into his defense. Although counsel hired a forensic expert, he admitted to the judge that, at the time of opening argument, he was "unclear" as to the substance of the expert's findings.[4] At trial, counsel's handling of the mental impairment strategy appears somewhat inconsistent. On the one hand, counsel elicited testimony from various lay witnesses regarding the defendant's intoxicated state and requested an intoxication instruction. On the other hand, he omitted the alcohol impairment theory from both his opening statement and closing argument. He ultimately made the strategic decision not to call the expert as a witness and advanced, as his primary argument, the "cause of death" theory, i.e., that the codefendant's conduct caused the victim's death. In a capital case, where a defendant alleges ineffective assistance of counsel "we do not focus on the adequacy of trial counsel's performance. Instead we determine 'whether there was an error in the course of the trial . . . and, if there was, whether that error was likely to have influenced the jury's conclusion.' " *Commonwealth* v. *Dahl*, 430 Mass. 813, 819 (2000), quoting *Commonwealth* v. *Wright*, 411 Mass. 678, 682 (1992).[5]

Viewed "in light of what a reasonably proficient trial lawyer

---

[4]As late as the fifth day of trial, defense counsel admitted, "There's a question as to whether I'm going to have [the expert testify] or not, but it's going to be resolved tonight . . . if I have to stay up half the night trying to get ahold [*sic*] of him." When the defense rested, the judge asked whether the decision not to call the expert was based on "unavailability" or "for tactical purposes." Counsel responded, "I'm not calling [the expert], because I have full knowledge of what his testimony would be had he testified."

[5]The trial judge rejected a similar argument as part of the defendant's motion for a new trial. In concluding that trial counsel "was not incompetent or ineffective by pursuing [cause of death] strategy without also seeking out a psychologist to testify about the defendant's intoxication and mental state,"

properly may have considered to be a reasonable trial strategy," *Commonwealth* v. *Bertrand*, 385 Mass. 356, 368 (1982), we note that the expert's testimony (presuming it supported the intoxication theory) could have weakened other aspects of the defense. See *Commonwealth* v. *Millyan*, 399 Mass. 171, 179-180 (1987). First, the cause of death theory hinged largely on the defendant's recollection of the events in question. The defendant testified in great detail to the events before, during, and after the beating. Given this posture, testimony (be it expert or lay) that focused on the defendant's intoxicated state could undermine the defense by casting suspicion on his ability accurately and credibly to recall such details.[6] See *id.* at 179 ("simply not credible" that defendant could present detailed account of events while also claiming mental impairment). Second, an intoxication theory would be of limited strategic value vis-à-vis the Commonwealth's joint venture theory. Where the joint venture spanned several days, intoxication has limited, if any, impact on the defendant's mental state. See *Commonwealth* v. *Pucillo*, 427 Mass. 108, 112 (1998). Finally, counsel did not overlook the intoxication theory altogether, but instead effectively presented it through lay testimony. See *Commonwealth* v. *Sarmanian*, 426 Mass. 405, 407 (1998); *Commonwealth* v. *Bannister*, 15 Mass. App. Ct. 71, 76 n.3 (1983). For these reasons, the jury's verdict is not likely to have been influenced by an expert advocating his mental impairment theory. See *Commonwealth* v. *Frank*, 433 Mass. 185, 192 (2001); *Commonwealth* v. *Mello*, 420 Mass. 375, 394 (1995); *Commonwealth* v. *Bousquet*, 407 Mass. 854, 864 (1990).[7] Trial counsel's deci-

the judge noted that the attorney "did not neglect to present to the jury the issues of intoxication and lack of malice." "[W]e give weight to the conclusion of the judge, who observed counsel's conduct throughout the trial." *Commonwealth* v. *Drayton*, 386 Mass. 39, 41-42 (1982).

[6]Conversely, the defendant's ability to recall detail tends to disprove an opinion that he suffered from mental impairment at any pertinent time. See *Commonwealth* v. *Harris*, 387 Mass. 758, 761-763 (1982).

[7]Relatedly, the defendant challenges the judge's denial of his motion for funds, pursuant to G. L. c. 261, § 27C, to retain the assistance of a clinical psychologist. "Section 27C does not authorize a judge to allow costs in connection with the presentation of a new trial motion based on a claim of ineffective assistance of counsel." *Commonwealth* v. *Carter*, 429 Mass. 266, 270

sion not to advance that theory, therefore, does not constitute ineffective assistance.

III. *Jury Instructions.*

The defendant claims the judge made several errors in his charge to the jury, some objected to and some not. Where the defendant did not object, we consider whether those portions created a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Vinton*, 432 Mass. 180, 188 (2000); *Commonwealth* v. *Wright*, 411 Mass. 678, 681 (1992). Where there was an objection raised, we determine whether there was an error, and, if so, whether it was prejudicial. *Commonwealth* v. *Vinnie*, 428 Mass. 161, 163 (1998).

a. *Proximate cause of death instruction.* As the judge noted, defense counsel presented "the most plausible defense available," i.e., the victim survived the defendant's beating but was suffocated by Babbitt.[8] Because this theory placed the "cause of death" at the heart of the case, the judge instructed as set forth in the margin.[9] In charging that conduct is a proximate cause of death if, "by the natural and continuous sequence of events, causes the death and without which the death would not have occurred," the judge properly stated the law as set forth in

(1999). See *Commonwealth* v. *Erdely*, 430 Mass. 149, 154 (1999); *Commonwealth* v. *Davis*, 410 Mass. 680, 684 (1991) (where Legislature chooses not to fund procedures not constitutionally mandated, "this court may not rewrite the statute to do so"). Nor did this posttrial denial of funds create a substantial likelihood of a miscarriage of justice. See G. L. c. 278, § 33E.

[8]The medical examiner listed "blunt head trauma" as the cause of death, but could not rule out asphyxiation. The jury also heard testimony that the victim's body emitted "a noise that sounded like air" when dropped into the shallow grave. This evidence suggests that the victim may have survived the attempted suffocation and was buried alive.

[9]"Cause of death. I've used that term. Let me tell you what that means in the law. For the defendant to be guilty of any form of murder or manslaughter, the defendant's conduct, either individually or while participating in a joint venture, must have caused the death of [the victim]. Cause means conduct which, by the natural and continuous sequence of events, caused the death and without which the death would not have occurred.

"Under the law, the defendant's conduct need not have been the only cause of death. It is not necessary that it be the sole cause of death. If the defendant, either individually or in a joint enterprise, beats a man to a point where his life is in jeopardy and death follows as a consequence of this beating, the defendant's conduct caused his death in the law, even if other causes cooperated in producing the death. So, as I said, it need not be the sole cause."

*Commonwealth* v. *Rhoades*, 379 Mass. 810, 825 (1980), quoting California Jury Instructions, Criminal § 8.55 (4th rev. ed. 1979), and the Model Jury Instructions on Homicide 60 (1999). The defendant objected, however, "to there being no instruction or direction given on supervening [or superseding] cause of death." Only with the benefit of that charge, the defendant claims, could the jury assess whether Babbitt's smothering of the victim sufficed to break the causal chain of criminal liability. See *Commonwealth* v. *Askew*, 404 Mass. 532, 534 (1989).

"The general rule is that the intervening conduct of a third party will relieve a defendant of culpability only if such an intervening response was not reasonably foreseeable." *Commonwealth* v. *Niemic*, 427 Mass. 718, 727 (1998), quoting *Commonwealth* v. *Askew, supra.* After considering the events leading up to the defendant's death — especially in light of the proffered joint venture theory[10] — we find that Babbitt's intervening conduct was foreseeable. As a result, we further conclude that the judge adequately instructed the jury on this matter. See *Commonwealth* v. *Askew, supra* at 535.

During his "cause of death" instruction, the judge twice referred to the import of the alleged joint venture. Given the viability of that theory, we need not speculate as to the jury's findings regarding the actual cause of death. Whether by beating, asphyxiation, or burial, the jury heard sufficient evidence to support a finding that the defendant and Babbitt participated in a joint venture to kill the victim. At least one eyewitness identified them as the perpetrators of the attack. A few days after the beating, the defendant, Babbitt, and Richard returned to "check in" on the victim. The defendant took no action when Babbitt suffocated the victim with a pillow,[11] but threatened to kill Richard should he tell anyone. Finally, the defendant and Babbitt, along with Richard, carried the victim's body from the motel and buried it in the nearby woods.

On this record, a reasonable jury could conclude that, from

[10]The joint venture dimension of this case distinguishes it from those relied on by the defendant. See, e.g., *State* v. *Munoz*, 233 Conn. 106, 114-127 (1995) (where defendant claimed unidentified third party inflicted fatal blows, failure to instruct on intervening cause warranted reversal).

[11]There was testimony that, immediately prior to the beating, the defendant unsuccessfully attempted to suffocate the victim.

the time of the beating, the defendant and Babbitt entered into a joint venture to kill the victim and that the enterprise spanned the days and events, i.e., the decision not to seek medical attention, the subsequent asphyxiation, and the burial. See *Commonwealth* v. *Perry*, 432 Mass. 214, 224 (2000) (defendant engaged in ongoing joint venture to inflict brutal and potentially fatal injuries on victim over extended period of time). The joint venture negates the efficacy of the defendant's theory that, if properly instructed, the jury could find that Babbitt's smothering broke the causal chain. *Id.* at 225 (various beatings "were not independent crimes or ventures producing independent effects"). To the contrary, where joint venturers set out to kill, the resulting death reasonably is foreseeable as long as the joint venture remains intact. See *Commonwealth* v. *Echavarria*, 428 Mass. 593, 598 (1998) ("it does not matter which of two joint venturers did the actual killing and the Commonwealth need not prove which is the killer"). An additional intervening cause instruction was not necessary. See *Commonwealth* v. *Pike*, 431 Mass. 212, 215 (2000).

b. *Failure to instruct on voluntary manslaughter and mitigating circumstances.* According to the defendant, evidence that the defendant's actions were the product of reasonable provocation and "sudden transport of passion" triggered the need for a voluntary manslaughter instruction with respect to the mitigating circumstances that would negate malice. Over the defendant's objection, the judge declined to give the requested instruction.

"In deciding whether the judge should have charged on manslaughter, we assume the version of the facts most favorable to the defendant." *Commonwealth* v. *Maskell*, 403 Mass. 111, 116 (1988), quoting *Commonwealth* v. *Schnopps*, 383 Mass. 178, 179 (1981), *S.C.*, 390 Mass. 722 (1984). Here, a voluntary manslaughter instruction was not warranted because no reasonable jury could possibly find any of the mitigating factors justifying a reduction from murder to manslaughter. See *Commonwealth* v. *Vinton*, 432 Mass. 180, 189 (2000); *Commonwealth* v. *Parker*, 402 Mass. 333, 344 (1988), *S.C.*, 412 Mass. 353 (1992), and 420 Mass. 242 (1995) (although defendant testified that victim struck defendant twice, "no

reasonable jury could have accepted the suggestion that the defendants were provoked into the brutal killing").

Prior to his intruding on the victim, the defendant banged on the wall and threatened, "shut up or we're going to come over there and kill you." Then, according to the defendant's own testimony, he knocked on the victim's door at approximately 1 A.M. After exchanging unpleasant words, the victim "slammed the door," causing the defendant to drop his beer. In response, the defendant "threw [his] shoulder into the [victim's] door and the door popped open." Once the defendant intruded into his room, the victim "came at [the defendant] with his hands up" and "looked angry." The defendant then proceeded to beat the victim in a brutal fashion by pushing and kicking the victim repeatedly until "he wasn't fighting back no more." The victim's efforts to expel the defendant from his premises can hardly be deemed "reasonable provocation" for the inhumane beating that ensued. Cf. *Commonwealth* v. *Berry*, 431 Mass. 326, 335 (2000) (instruction warranted where victim "charged the defendant" and hit him with beer bottle). Moreover, to the extent the evidence presented a joint venture lasting over a period of four days, a case for reasonable provocation or "sudden combat" cannot be maintained.

Given this record, we are convinced that no view of the evidence "would warrant a reasonable doubt that something happened [i.e., provocation] which would have been likely to produce in an ordinary person such a state of passion, anger, fear, fright, or nervous excitement as would eclipse his capacity for reflection or restraint, and that what happened actually did produce such a state of mind in the defendant." *Commonwealth* v. *Little*, 431 Mass. 782, 785-786 (2000), quoting *Commonwealth* v. *Berry*, *supra* at 334. As a result, the judge was correct in refusing to give a voluntary manslaughter charge.[12]

c. *Failure to give* Gould *instruction.* Several witnesses testified to the defendant's intoxication on the night of the beating.

---

[12] The defendant's contention that the jury could have believed that the victim had a history of mental illness-paranoia also lacks merit. In seven volumes of transcript, only a solitary reference to the victim's mental history appears and thus such evidence is insufficient to warrant the requested charge.

On that basis, the defendant submitted a written request for an instruction consistent with *Commonwealth* v. *Gould*, 380 Mass. 672, 685-686 (1980), i.e., that the jury may consider a defendant's intoxication, or impaired mental capacity, if any, "on the issue of [whether the murder was committed with] extreme atrocity or cruelty." See *Commonwealth* v. *Perry*, 385 Mass. 639, 648-650 (1982), quoting *Commonwealth* v. *Gould*, *supra* at 686 (failure to give requested instruction supports reduction to murder in the second degree). The judge denied the request but charged that, "[w]hen proof of a particular crime requires proof that the defendant had a certain intent, mental state, or knowledge, you must consider all the credible evidence relevant to his intent, mental state, or knowledge, including any evidence of whether his mental capacity was affected by consumption of alcohol."[13] While the judge's failure to give the requested instruction constitutes error, *Commonwealth* v. *McDermott*, 393 Mass. 451, 456-459 & nn. 5, 7 (1984), the omission does not merit a new trial.

"In this Commonwealth, while intoxication is no excuse or mitigation of a crime committed, a defendant is entitled, upon request, to an instruction to the effect that if he were so far overcome by intoxicating substances as to be rendered incapable of . . . committing murder with extreme atrocity or cruelty, the jury must return a verdict of murder in the second degree, if they are satisfied beyond a reasonable doubt that all other elements of the crime are present." *Commonwealth* v. *Doucette*, 391 Mass. 443, 455 (1984). See *Commonwealth* v. *Shanahan*, 422 Mass. 631, 632 (1996). Such instructions, "although *required* if requested, are not constitutionally based" (emphasis added). *Commonwealth* v. *Barros*, 425 Mass. 572, 578 (1997), quoting *Commonwealth* v. *Doucette*, *supra* at 455. The judge erred in omitting the requested charge.

Unlike *Commonwealth* v. *McDermott*, *supra* at 456-459 (omitting requested instruction, over defendant's objection, war-

---

[13]The jury interrupted their deliberation to ask for "another explanation of the factors that contribute to a finding of 'by extreme atrocity or cruelty.' " After the judge's restating the initial instruction, the defendant renewed his objection as to the omission of any intoxication language.

ranted reduction to murder in second degree), the error did not prejudice the defendant. First, the judge properly instructed the jury several times that they could take into account the effects of alcohol on the defendant's state of mind. See *Commonwealth* v. *Sarmanian*, 426 Mass. 405, 408 (1998); *Commonwealth* v. *James*, 424 Mass. 770, 790 (1997). Moreover, "[w]e have never required more than a simple instruction that the jury may consider voluntary intoxication when considering state of mind." *Commonwealth* v. *Raymond*, 424 Mass. 382, 387 (1997). Second, because there was no evidence of intoxication other than at the time of the initial beating, and the defendant's conduct constituted an ongoing joint venture, a *Gould* instruction would have been of minimal significance. Finally, the defendant's extensive recollection of his actions, thoughts, and details regarding that initial confrontation with the victim undercuts the impact of the alleged intoxication. See *Commonwealth* v. *Sanna*, 424 Mass. 92, 102-103 (1997). Here, the omission of a more specific instruction regarding intoxication, although regrettable, is not an adequate basis to reduce the degree of murder, let alone warrant a new trial. See *Commonwealth* v. *Murphy*, 426 Mass. 395, 399-400 (1998); *Commonwealth* v. *Raymond, supra*.

d. *Instructing on murder in the second degree before murder in the first degree.* The judge offered "the definition of second degree murder" before defining first degree murder because "[i]t is easiest to understand if I define second degree murder first." The defendant's argument that the inversion was error is answered by *Commonwealth* v. *Raymond, supra* at 387, where the judge addressed murder in the second degree first, but "did not direct the jury to make a decision on second degree murder before considering murder in the first degree, which was the critical error" in *Commonwealth* v. *Sama*, 411 Mass. 293, 299-300 (1991) (error where judge repeatedly instructed jury to consider first whether defendant was guilty of murder in second degree and then decide whether evidence supported a finding that would increase verdict to murder in the first degree). Similarly, in this case, "we see no possibility that a reasonable juror could have misunderstood the instructions simply because

the judge reversed the correct order of instruction on murder in the first degree and murder in the second degree." *Commonwealth* v. *Raymond, supra.*[14]

e. *Instructions on inferences.* The judge instructed that "[t]he jury may draw reasonable conclusions from the evidence as long as any conclusions or inferences that you draw are solidly based on the evidence and the jury's calm reasoning applied to the evidence. You may not guess at something, but you may apply your reasoning powers to draw reasonable and fair conclusions from the evidence as long as it is solidly based on the evidence and based on the jury's fair reasoning." The defendant objected, stating, "There was no definition or instruction on what 'solidly based' is. There were no examples . . . given what is a reasonable and what is an unreasonable inference." Although the judge did not "define" the term "inference," his instructions adequately conveyed the nature of the inference-drawing process, i.e., applying one's "reasoning powers to draw reasonable and fair conclusions from the evidence as long as it is solidly based on the evidence and based on the jury's fair reasoning." See S.B. Hrones & W.P. Homans, Jr., Massachusetts Jury Instructions — Criminal No. 2-2 & comment (2d ed. 1999). See *Commonwealth* v. *Shea*, 398 Mass. 264, 270 n.3 (1986). To the extent that inferences were essential to proving any element of the crime, the judge instructed the jury to "determine whether the fact [or facts] has been proven beyond a reasonable doubt." See *Commonwealth* v. *Niziolek*, 380 Mass. 513, 522 (1980). Moreover, the judge's decision to forgo approved illustrations such as shoe prints in the snow, see *Commonwealth* v. *Webster*, 5 Cush. 295, 312 (1850), or mail through the mail slot, see *Commonwealth* v. *Talkowski*, 33 Mass. App. Ct. 720, 722 (1992), does not constitute grounds for reversal.

---

[14]Notwithstanding this conclusion, we reiterate our recommendation in *Commonwealth* v. *Sama*, 411 Mass. 293, 300 (1991), that a "jury should not be instructed to find murder in the second degree and then proceed to inquire whether the defendant is guilty of murder in the first degree. A jury should be instructed first to decide whether the defendant is guilty of murder and, if so, then to decide whether the defendant is guilty of murder in the first degree."

Given the context of the entire charge, the judge's instruction regarding inferences was sufficient.[15]

f. *Instruction on unlawful act manslaughter*. As part of his unlawful act manslaughter charge, the judge stated that "this type of manslaughter . . . requires an assault and battery not amounting to a felony where the defendant knew or should have known from the circumstances that the assault and battery endangered human life." The defendant did not object at trial, but now contends that the judge erred by making "the non-felonious character of the battery an element of the crime of battery involuntary manslaughter." Based on the evidence, a reasonable jury could find the elements of battery manslaughter, i.e., whether in the circumstances known by the defendant, a reasonable person would have recognized that the battery endangered human life. Our most recent jurisprudence in this matter confirms — either explicitly, *Commonwealth* v. *Williams*, 428 Mass. 383, 390 (1998), or implicitly, *Commonwealth* v. *Cruz*, 430 Mass. 182, 186 (1999) — that the underlying battery or "unlawful" act must "not amount[] to a felony." Accordingly, the judge's instruction on the matter was not error.

We reject the defendant's remaining claims of error. The jury were properly instructed regarding both joint venture, see *Commonwealth* v. *Semedo*, 422 Mass. 716, 723 (1996) (knowledge of joint venturer's possession of weapon not necessary in extreme atrocity or cruelty cases); *Commonwealth* v. *Springer*, 49 Mass. App. Ct. 469, 483 (2000), quoting *Commonwealth* v. *Colon-Cruz*, 408 Mass. 533, 555 n.13 (1990), and the *Cunneen* factors. See *Commonwealth* v. *Cunneen*, 389 Mass. 216, 227 (1983). See also *Commonwealth* v. *Niemic*, 427 Mass. 718, 723 (1998) (upholding substantially equivalent *Cunneen* instruction).

IV. *Conclusion.*

Pursuant to our duties under G. L. c. 278, § 33E, we have reviewed the entire record. We find nothing that compels us to exercise our discretion to disturb the jury's verdict, either by

---

[15]The defendant suggests that the inferences instruction raises a particular concern regarding one juror who expressed an inability to understand "fancy words." From the outset, the judge encouraged the juror to raise his hand if he had trouble understanding any terms. There is no evidence that the instruction confused this, or any other, juror.

reducing the degree of guilt or granting a new trial. We affirm the conviction. We also affirm the denial of the defendant's motion for a new trial and his amended motion for funds.

*So ordered.*