COMMONWEALTH *vs.* SANDRA CARLSON.

Worcester. May 5, 2006. - June 21, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Motor Vehicle,* Homicide. *Proximate Cause. Statute,* Construction. *Practice, Criminal,* Instructions to jury.

At the trial of a criminal complaint charging motor vehicle homicide by negligent operation, G. L. c. 90, §˙24G (*b*), the defendant was not entitled to a required finding of not guilty, where the defendant's negligent failure to stop, or yield the right of way, at an intersection (an action for which the defendant accepted responsibility) set in motion a chain of events that resulted in the victim's death and that was not broken by the reasonably foreseeable decision of the victim (who had serious preexisting health problems that were exacerbated by the injuries from the accident) not to undertake medical procedures that would, in all probability, have allowed her to survive the accident. [82-86]

At a criminal trial, the judge's instructions to the jury on causation did not create a substantial risk of a miscarriage of justice, where the instructions focused the jury's attention on the issue of causation and correctly left the issue of foreseeability to the jury. [86-87]

COMPLAINT received and sworn to in the East Brookfield Division of the District Court Department on October 8, 2002.

The case was tried before *Charles A. Abdella,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Sean J. Gallagher* for the defendant.

*Ellyn H. Lazar-Moore,* Assistant District Attorney, for the Commonwealth.

GREANEY, J. We transferred this case here on our own motion to consider the scope of criminal liability for the negligent operation of a motor vehicle that results, in the circumstances described below, in death. A jury in the East Brookfield Division of the District Court Department convicted the defendant on a complaint charging motor vehicle homicide by negligent

operation, G. L. c. 90, § 24G (*b*).[1] The evidence at trial demonstrated that Carol Suprenant (victim) was hospitalized with chest and lung injuries suffered as a result of an accident caused by the defendant's negligent operation of an automobile and died of respiratory failure four days later after her doctors, at her request, removed her from a ventilator that allowed her to breathe and might have ensured her survival. The defendant appeals from her conviction, challenging (as she did at trial) the sufficiency of the evidence proving causation and claiming (for the first time on appeal) that the trial judge's instructions to the jury on the concept of superseding causes were inadequate. We affirm the conviction.

1. The jury could have found the following facts. On July 4, 2002, the victim and her husband, Robert Suprenant, left their home in Spencer to attend a cookout at their daughter's home. At about noon, the Suprenants were traveling south on Mechanic Street and had just entered the intersection of Mechanic and Chestnut Streets, when their automobile was struck on the passenger side by an automobile traveling east on Chestnut Street operated by the defendant. The force of impact pushed the Suprenants' automobile a distance of approximately fifteen to twenty feet, across the road, over a sidewalk, and into a chain link fence. Traffic entering the intersection from the defendant's direction was controlled by both a stop sign and blinking red light. A jury could infer that the defendant had failed to stop (or yield the right of way) at the intersection and, thus, was negligent. The victim was transferred from the accident scene by emergency medical personnel to St. Vincent's Hospital at Worcester Medical Center.

As a result of the accident, the victim suffered multiple chest wall fractures, including fractures of the ribs and sternum and a lung contusion. The victim had suffered for several years prior to the accident from chronic obstructive pulmonary disease (COPD), a condition which makes it difficult to breathe and,

---

[1]The defendant was sentenced to twelve months in a house of correction, suspended for thirty-six months, and six months of electronically monitored house arrest, and her driver's license was revoked for ten years. Execution of her sentence was stayed pending appeal by a single justice of the Appeals Court.

thus, to supply oxygen to the bloodstream, and had required the use of an oxygen tank in her home to assist in her breathing.[2] The trauma to her chest compromised her ability to breathe as she had before the accident, to the point where she could no longer oxygenate her blood by normal breathing. That night in the intensive care unit, the victim was intubated and placed on a ventilator.[3] The next morning, the doctors removed the victim from the ventilator, and she was transferred from the intensive care unit to a medical floor in the hospital.

Over the next few days, the victim's breathing difficulties increased. Three doctors separately advised the victim of the need to reintubate her and place her again on a ventilator in order to assist her breathing. At first the victim, who had in the past repeatedly told her daughter-in-law (and health proxy) that she never wanted to be kept alive by a ventilator, refused permission for the doctors to do so. After speaking with family members and her doctors, however, the victim acquiesced and allowed herself to be reintubated, at least temporarily, in order to determine if her health would improve.

The next morning the victim's kidneys began to fail, and doctors advised the victim that her worsening condition would require dialysis. At this point, the victim stated that she no longer wished to be attached to a ventilator. Two doctors on the medical staff of the hospital met separately with the victim to discuss the nature of the circumstances facing her and the probable consequences of forgoing mechanical ventilation. The victim's personal physician also spoke with her at great length about her decision and encouraged her to remain on the breathing tube and ventilator to allow her situation time to improve. The victim understood (a jury could infer) that her death was

---

[2] The victim's primary care physician testified at trial that the victim's condition would have gradually deteriorated over time and that the disease would have shortened her life. He opined that, based on the severity of her disease, the victim could have expected to enjoy only three to six more years of "good quality" life.

[3] Intubation is a procedure where a hollow tube, one-half to three-quarters of an inch in circumference, is inserted into the mouth and approximately six to eight inches into the windpipe. The tube enables oxygen to be delivered directly into the lungs by means of a ventilator. A ventilator was described at trial as a "mechanical breathing machine" that pushes air into and out of the lungs by way of a pressure piston.

probable if she did not allow intubation and that, conversely, her injuries were potentially survivable if she remained on the ventilator. The victim was adamant that she did not want to be intubated. On July 8, she was taken off the ventilator and the intubation tube was removed. She died a few hours later from respiratory failure.

At trial one doctor testified that, if the accident had not happened, the victim probably would not have needed a ventilator and could have continued being on home oxygen in her usual fragile state of health, but that the chest injuries suffered in the accident "tipped the scales against her." He also opined that the victim's decision not to be intubated "likely played a role in her death." Another doctor stated his opinion "to a reasonable degree of medical certainty" that the victim would have survived her injuries if she had agreed to mechanical ventilatory support, and might even have returned to the state she was in before the accident, but conceded as well that the victim might have required "chronic and continuous ventilatory support." The victim's daughter-in-law assessed the situation as follows: "We all knew that it was a possibility that she might not make it, but [the doctors] couldn't give us a guarantee that she would make it without . . . hav[ing] to be on a [ventilator] for the rest of her life, and she didn't want to live like that, and we couldn't force her to do that." The victim's primary care physician testified, "I do think her mind was made up."

2. The judge denied the defendant's motions for the entry of a required finding of not guilty presented at the close of the Commonwealth's case and at the close of all the evidence. The defendant argues that the Commonwealth's proof was insufficient to sustain the conviction because no rational jury could have determined, beyond a reasonable doubt, that the victim's death from respiratory failure was proximately caused by the defendant's negligence.[4] The defendant asserts that the victim's death was a direct result of her independent decision not to

---

[4] Conviction under G. L. c. 90, § 24G (*b*), requires proof by the Commonwealth beyond a reasonable doubt that (1) the defendant operated a motor vehicle, (2) on a public way, (3) in a negligent manner to endanger lives and public safety, (4) thereby causing the death of another person. The focus at trial was on whether the defendant was negligent and whether her negligence caused the victim's death. Only the latter element is at issue in this appeal.

undertake medical procedures that could be considered appropriate for a person in her condition and that would, in all probability, have allowed her to survive the accident. The defendant concedes that the victim had the right to make an informed decision to forgo life support, but argues that the victim's choice broke the chain of causation and relieved the defendant of criminal responsibility for the victim's death. We disagree.

The defendant was not entitled to a required finding of not guilty. The standard of causation under G. L. c. 90, § 24G, is the same as that employed in tort law. See *Commonwealth* v. *Berggren*, 398 Mass. 338, 340 (1986). Conduct is a proximate cause of death if the conduct, "by the natural and continuous sequence of events, causes the death and without which the death would not have occurred." *Commonwealth* v. *Rosado*, 434 Mass. 197, 202, cert. denied, 534 U.S. 963 (2001).[5] There is no question that the defendant's negligent failure to stop, or yield the right of way, at the intersection (for which the defendant accepts responsibility in this appeal) set in motion a chain of events that resulted in the victim's death. The victim's injuries from the accident exacerbated serious preexisting health problems and required her to be intubated and placed on the ventilator. Her ultimate decision to be removed from life support was not an independent occurrence but the final step in the

---

[5]The term "proximate cause" has fallen into disfavor. Drafters of the Restatement (Third) of Torts: Liability for Physical Harm § 574 (Proposed Final Draft No. 1, 2005), make clear their dislike for the term as "an especially poor one to describe the idea to which it is connected," and have opted instead to use "scope of liability" as the umbrella term for the concept that, for liability to be imposed, the harm that occurred must be one that results from the hazards that made the defendant's conduct tortious. We continue to use the term as it has been used in the past, as shorthand for the principle that an actor's liability is limited to those physical harms that are within the foreseeable risks of the tortious conduct. See, e.g., *Kent* v. *Commonwealth*, 437 Mass. 312, 321-322 (2002). See also *Heng Or* v. *Edwards*, 62 Mass. App. Ct. 475, 485-491 (2004) (in-depth discussion of conventional use of "proximate cause" and possible alternative formulations). We thus leave for another day, in a case where the matter is appropriately briefed, the issue whether we should replace the term "proximate cause," as defined in our case law, with the term "scope of liability," as defined in the proposed Restatement (Third) of Torts, and the principles accompanying "scope of liability" set forth therein. The judge did not use the term "proximate cause" while instructing the jury.

continuous sequence of events that began with the defendant's negligent operation of her automobile. "But for" the negligence, the accident would not have occurred, and the victim would not have been forced into the position of having to make what was, in retrospect, a true life-or-death decision.

The general rule is that intervening conduct of a third party will relieve a defendant of culpability for antecedent negligence only if such an intervening response was not reasonably foreseeable. See *Jean W.* v. *Commonwealth,* 414 Mass. 496, 503 n.6 (1993) (Liacos, C.J., concurring), quoting *Irwin* v. *Ware,* 392 Mass. 745, 762 (1984) ("[T]he foreseeability of the harm [is] the 'most crucial factor' justifying liability"); *Commonwealth* v. *Askew,* 404 Mass. 532, 534 (1989); *Copithorne* v. *Framingham Union Hosp.,* 401 Mass. 806 (1988). "This is just another way of saying that an intervening act of a third party that was not reasonably foreseeable in the circumstances would prevent the victim's death from following naturally and continuously from the defendant's conduct." *Commonwealth* v. *Askew, supra.* Whether an intervening act was reasonably foreseeable and, thus, followed naturally from the defendant's conduct, or unforeseeable and, thus, broke the chain of causation as matter of law, is a question of fact for the jury to decide based on an assessment of the circumstances. See *Solimene* v. *B. Grauel & Co.,* 399 Mass. 790, 794-795 (1987); Restatement (Second) of Torts § 453 comment b (1965) (if either facts or reasonable foreseeability of intervening act are subject to reasonable difference of opinion, question of proximate cause must go to jury).

Here, the victim's choice was between invasive life support that might have assured her survival, but could also have led to a life of ventilator dependence (and, we may assume, continued pain and suffering), or acceptance of "comfort measures" only. The record shows that the victim was intelligent and coherent at all times. She had an absolute right to make the decision that she did. See *Harnish* v. *Children's Hosp. Med. Ctr.,* 387 Mass. 152, 154 (1982); *Superintendant of Belchertown State Sch.* v. *Saikewicz,* 373 Mass. 728, 744-745 (1977). Modern medicine can sometimes prolong or sustain life by way of invasive procedures, but it is common knowledge that some patients will refuse to consent to such procedures. The jury were warranted

in determining, in the circumstances of this case, that the victim's decision to forgo invasive life support was reasonably foreseeable.[6]

The defendant poses the question: "In the realm of crimes of negligence, should the tort concept of 'you take your victim as you find him' apply . . . even though, by pure chance and coincidence, it has the effect of turning an act of simple negligence into a serious crime?" The answer to this question is "yes."

Through the enactment of G. L. c. 90, § 24G (*b*), the Legislature has decided, as matter of social policy, to deter acts of reckless driving by making the killing of another human being by means of negligent operation of a motor vehicle an offense punishable by up to two and one-half years' imprisonment and a $3,000 fine. Prior to the statute's enactment, prosecutors presented with facts like those before us had to choose between prosecution of a misdemeanor, such as driving so as to endanger, G. L. c. 90, § 24 (2) (*a*), or of the far more serious crime of involuntary manslaughter, G. L. c. 265, § 13, which carries a maximum penalty of twenty years' imprisonment. See *Commonwealth* v. *Jones*, 382 Mass. 387, 390 (1981), citing memorandum from Mr. Endicott Peabody to the Judiciary Committee of the Massachusetts General Court, dated March 29, 1976, regarding 1976 Senate Doc. No. 703. We have concluded that the Legislature intended the statute "to provide a middle ground between the felony of manslaughter and the misdemeanor of driving so as to endanger." *Commonwealth* v. *Jones*, *supra* at 390-391. A finding of ordinary negligence is sufficient to establish a violation of the statute. See *id.* at 389, and cases cited. The defendant's insistence that this standard is not fair, or leaves "nothing to soften the blow," is irrelevant.

The defendant's suggestion that she should not be held accountable for the victim's death, because the same injuries would have been minor if inflicted on a healthy young person,

---

[6]The defendant's attempt to assign blame to the victim for her own death, because she "made the deliberate choice to . . . engage in irrational and self-destructive behavior" is not persuasive. There is no contributory negligence in the law of motor vehicle homicide. See *Commonwealth* v. *Campbell*, 394 Mass. 77, 87 (1985), and cases cited. We also reject the defendant's attempt to apply the tort doctrine of "avoidable consequences" to this criminal matter.

has no merit. Our long-standing rule in Massachusetts, in criminal law as well as in tort, is that "the wrongdoer takes the victim as he or she finds him." *Commonwealth* v. *Tevlin*, 433 Mass. 305, 313 (2001). See *Commonwealth* v. *Fernette*, 398 Mass. 658, 668 (1986); *Commonwealth* v. *Starling*, 382 Mass. 423, 429 (1981); *Wiemert* v. *Boston Elevated Ry.*, 216 Mass. 598, 603 (1914); *Commonwealth* v. *Hackett*, 2 Allen 136, 142 (1861); *Commonwealth* v. *Fox*, 7 Gray 585, 586-587 (1856) (if the act hastened the death, then the death was caused by the act).

3. We now consider the defendant's argument that the judge's instructions to the jury on causation were so inadequate and confusing as to require a new trial. The defendant asserted no challenge to the judge's instructions at trial. She is entitled to relief only if she demonstrates error in the instructions that created a substantial risk of a miscarriage of justice, namely, "a substantial danger that the jury was misled by [an] erroneous instruction, and that the instruction may have materially influenced their appraisal of the [evidence]." *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967). There was no error.

The judge properly charged the jury on the elements of negligent motor vehicle homicide.[7] He advised the jury that there may be more than one cause of a person's death, but that the Commonwealth is required to prove beyond a reasonable doubt that the defendant "directly and substantially set in motion a chain of events that produced the death in a natural and continuous sequence," and that the death would not have occurred without the defendant's actions. This is a correct statement of the law. See *Commonwealth* v. *Berggren*, 398 Mass. 338, 341 (1986).

The judge instructed the jury on the law of intervening events and superseding causes, as set forth in the margin,[8] in ac-

---

[7] The judge also instructed the jury on the lesser included charge of operating a motor vehicle negligently so as to endanger the public, G. L. c. 90, § 24 (2) (*a*).

[8] "If the defendant's actions would not have brought about the death all by themselves without the intervention of some other person or event, the defendant is still held responsible as the cause of death if two conditions are met. First, the defendant's actions directly and substantially set in motion a

cordance with what has been said in this opinion.[9] The judge emphasized that the jury must acquit the defendant "if the death would not have occurred without the intervention of another person or event, and a reasonable person in the same circumstances would not have foreseen the likely possibility of such a result."[10] There was no possibility that the jury did not understand that they must find beyond a reasonable doubt that the defendant's negligence directly set in motion a continuous chain of events that produced the death, and that they must acquit the defendant if the death would not have occurred without the intervention of some other person or event that was not reasonably foreseeable. The judge's instructions focused the jury's attention on the issue of causation and correctly left the issue of foreseeability to the jury. See *Solimene* v. *B. Grauel & Co.*, 399 Mass. 790, 796 (1987); *Commonwealth* v. *McLeod*, 394 Mass. 727, 745, cert. denied sub nom. *Aiello* v. *Massachusetts*, 474 U.S. 919 (1985).

4. The order staying the defendant's sentence on her conviction of homicide by negligent operation of a motor vehicle is vacated. The judgment of conviction is affirmed.

*So ordered.*

---

natural, continuous sequence of events to cause the death. And second, a reasonable person in the defendant's position would have foreseen that her actions could easily result in serious injury or death to someone like the victim."

[9]The instructions tracked, substantially, Instruction 5.27 of the Model Jury Instructions for Use in the District Court (1995). The judge's use of the word "result" instead of the word "event" was immaterial and did not change the essential meaning of the instruction.

[10]The jury returned during deliberations seeking a copy of the law of negligent motor vehicle homicide. The judge responded by repeating the substance of his earlier instructions. The jury later requested clarification on the issue of causation and asked for specific examples that would help to distinguish between what is, and what is not, a "major factor in the cause of death." The judge declined to give examples but repeated, for the third time, his instructions on the elements of negligent motor vehicle homicide and on intervening events and superseding causes.