NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-466

COMMONWEALTH

vs.

RANDY CAMPBELL.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial, the defendant was convicted of involuntary manslaughter, G. L. c. 265, § 13, motor vehicle homicide by negligent operation, G. L. c. 90, § 24G (b), and negligent operation of a motor vehicle, G. L. c. 90, § 24 (2) (a).[1]  The defendant challenges the sufficiency of the evidence of wanton and reckless conduct.  He also maintains that the convictions of motor vehicle homicide and negligent operation are duplicative of the manslaughter conviction, which the Commonwealth concedes.  We affirm the conviction of manslaughter and reverse the other two convictions.

---

[1] The defendant was acquitted of three other charges.

Background.  The charges in this case arose from a crash caused by the defendant's speeding down a highway and slamming into a stopped Volkswagen SUV at eighty-six miles per hour.  The force of the impact drove the Volkswagen off the road and into a tree, killing the front-seat passenger.

The crash happened on Route 3 northbound on a clear, sunny, Sunday morning in July.  Traffic was moving at seventy to seventy-five miles per hour in a sixty mile-per-hour zone until a lane closure brought traffic to a dead stop before former exit 12.  An emergency highway repair caused the back-up.

Other drivers and passengers safely stopped their vehicles before encountering the lines of stopped cars.  Exit 12 was located on a rise in the road and drivers described seeing the line of stopped cars as they approached.  A collision analysis and reconstruction expert testified that "the roadway was, it should have a nice line -- it should be a line of sight for that distance.  So you should be able to see traffic slowing down in that area."  After the victim's daughter brought her Volkswagen to a safe stop, she could clearly see, behind her, the defendant's car barreling down on them.

The defendant drove into this traffic jam at eighty-six miles per hour.  He never braked.  After slamming into the Volkswagen and driving it off the road, the defendant's car smashed into the minivan that had been safely stopped in front

2

of the Volkswagen.  Neither weather nor mechanical concerns were an issue.  One witness, who was going seventy miles per hour in the left lane, testified that before the crash, the defendant passed him on the right, gave him the middle finger, and then the defendant's car moved slightly toward the witness's lane before it "jerked" back into the right lane.  As the defendant continued overtaking other drivers, this witness twice saw him gesture to other drivers with the middle finger.

The defendant complained of injuries at the scene and was taken to a hospital where, as part of the trauma protocol, his blood was drawn.  The resulting toxicology report showed the presence of opioids (fentanyl, methadone, oxycodone) as well as marijuana in the defendant's blood.  Opioids are central nervous system depressants that can cause dizziness or drowsiness, confusion, impaired judgment, and a decrease in coordination or motor skills.  The jury also heard that, although the defendant suffered a broken collarbone and complex fractures in his lower spine, he was walking at the scene, displaying behavior that the treating doctor found unusual.  The treating doctor explained that the opioids found in the defendant's blood can control pain, rendering a patient's ability to describe pain less reliable.  Marijuana may also render a person's ability to describe pain less reliable.

Discussion.  1.  Sufficiency of evidence.  We "must view the evidence presented at trial, together with reasonable inferences therefrom, in the light most favorable to the Commonwealth to determine whether any rational jury could have found each element of the offense beyond a reasonable doubt." Commonwealth v. Robinson, 482 Mass. 741, 744 (2019).  In so doing, we bear in mind that guilt may be established by circumstantial evidence "and that the inferences a jury may draw from the evidence 'need only be reasonable and possible and need not be necessary or inescapable.'"  Commonwealth v. Linton, 456 Mass. 534, 544 (2010), quoting Commonwealth v. Lao, 443 Mass. 770, 779 (2005), S.C., 450 Mass. 215 (2007).

"Involuntary manslaughter arises where death is caused by wanton or reckless conduct -- that is, 'intentional conduct that create[s] a high degree of likelihood that substantial harm will result to another person.'"  Commonwealth v. Njuguna, 495 Mass. 770, 781 (2025), quoting Commonwealth v. O'Brien, 494 Mass. 288, 297 (2024).  The defendant need only "inten[d] to engage in the wanton or reckless conduct itself," and need not "inten[d] to cause the specific harm."  Njuguna, supra.  The Commonwealth may prove intent "either subjectively, based on the defendant's specific knowledge, or objectively, based on what a reasonable person should have known in the circumstances."  Id.  "Conduct is a proximate cause of death if the conduct, 'by the natural

4

and continuous sequence of events, causes the death and without which the death would not have occurred.'" Commonwealth v. Carlson, 447 Mass. 79, 83 (2006), quoting Commonwealth v. Rosado, 434 Mass. 197, 202, cert. denied, 534 U.S. 963 (2001).

When the defendant crashed into the back of the victim's Volkswagen, he was driving eighty-six miles per hour in a sixty-mile-per-hour zone. The defendant's driving was not merely fast, but excessively fast, aggressive, and intimidating. In the moments leading up to the collision, the defendant was passing other vehicles on the right while gesturing obscenely at them, and "jerking between lanes." He repeatedly reached an arm out of the vehicle while extending his middle finger. During at least some of the time, he had his left foot up on the dashboard.

The trial evidence supported a conclusion that it was possible both to see the build-up of stopped cars and to stop safely, yet the defendant never braked. See Commonwealth v. Rand, 363 Mass. 554, 562 (1973). Neither road conditions nor vehicle conditions factored in the crash. Although the jury did not find the defendant guilty of any of the impaired operation charges, they were nonetheless entitled to consider evidence that he had opioids in his system and exhibited a pain tolerance consistent with opioid and marijuana use. See, e.g., Commonwealth v. Guaman, 90 Mass. App. Ct. 36, 41 (2016). Viewed

5

in the light most favorable to the Commonwealth, the evidence supported the conclusion that the victim's death was part of a "natural and continuous sequence of events" flowing from the defendant's behavior. Carlson, 447 Mass. at 83, quoting Rosado, 434 Mass. at 202. See Njuguna, 495 Mass. at 782-783 (traveling at excessive speed, tailgating, weaving between lanes, and attempting to pass vehicles in dangerous manner may constitute wanton or reckless conduct sufficient for manslaughter conviction); Commonwealth v. DeSimone, 349 Mass. 770, 770-771 (1965) (weaving through traffic, tailgating, and hazardous passing may constitute wanton or reckless conduct sufficient for manslaughter conviction).

2. Duplicative convictions. The defendant asserts, and the Commonwealth concedes, that convictions of motor vehicle homicide by negligent operation and of negligent operation are duplicative of a conviction of involuntary manslaughter. Having conducted an independent examination of the issue, see Commonwealth v. Poirier, 458 Mass. 1014, 1015 (2010), we agree. See Njuguna, 495 Mass. at 771; Commonwealth v. Jones, 382 Mass. 387, 394-395 (1981). Because we uphold the defendant's conviction of involuntary manslaughter, we reverse the other two convictions.

3. Sentencing. The Commonwealth requests that we remand the case for resentencing on the defendant's sole remaining

conviction.  The Commonwealth maintains that a sentence of from twelve to fourteen years should be imposed so as to permit a comprehensive, thoughtful sentencing package like the one imposed by the judge after trial, and suggests that this approach would not violate the principles of double jeopardy.

"When faced on appeal with two convictions that are duplicative of each other, appellate courts have generally considered it 'appropriate' to vacate the conviction on the offense with fewer elements and 'to affirm the conviction on the more serious offense' without remand to the trial court" (citations omitted).  Commonwealth v. Rivas, 466 Mass. 184, 189 (2013).  While we agree with the Commonwealth's characterization of the care with which the judge considered and imposed the original sentences, we discern no reason to depart from the usual remedy of vacating the convictions and sentences on the lesser offenses and affirming on the greater offense.  See Jones, 382 Mass. at 395, citing Commonwealth v. White (No. 2), 365 Mass. 307, 311 (1974), cert. denied, 419 U.S. 1111 (1975); Kuklis v. Commonwealth, 361 Mass. 302, 309 (1972).  Of course, nothing we say here limits the trial judge's authority to reconsider the sentence pursuant to Mass. R. Crim. P. 29 (a) (2), as appearing in 489 Mass. 1503 (2022) (revise and revoke following rescript of appellate court).

7

Conclusion. On indictment no. 2183CR00045-001, charging motor vehicle homicide by negligent operation, the judgment is vacated, the verdict is set aside, and the indictment is to be dismissed. On indictment no. 2183CR00045-005, charging negligent operation of a motor vehicle, the judgment is vacated, the verdict is set aside, and the indictment is to be dismissed. On indictment no. 2183CR00045-003, charging involuntary manslaughter, the judgment is affirmed.

So ordered.

By the Court (Hershfang, Hodgens & Smyth, JJ.[2]),

*Paul Little*

Clerk

Entered: December 17, 2025.

---

[2] The panelists are listed in order of seniority.